## R. R. WHEATLEY ET AL. V. JOHN KOLLEAR.

Decided December 31, 1910.

**1.—Anti-Trust Law—Lease Contract.**

A lease of premises intended to be used as a saloon stipulated that the landlord would not rent any other property owned by him on the same street to any person to be used for the sale of intoxicating or non-intoxicating liquors or drinks, and that the landlord would prohibit the sale of such liquors and drinks in all the buildings owned by him on said street, fixing a penalty for the violation of said agreement. Held, said contract was not subject to the objection that it evidenced a combination between the parties thereto to carry out restrictions and lessen competition in the sale and purchase of commodities and was not in violation of our anti-trust statutes.

**2.—Same—Statute Construed.**

Act of 1903 (Gen. Laws, 1903, p. 119), commonly known as the "anti-trust law," construed.

Appeal from the County Court of Potter County. Tried below before Hon. M. J. R. Jackson, Special Judge.

*Barrett & Jones,* for appellants.—Where the acts of two or more persons are combined to carry out restrictions or lessen competition in the sale or purchase of commodities under and by virtue of a contract, such contract is void in that it is in violation of the anti-trust laws of Texas. Texas P. Coal Co. v. Lawson, 34 S. W., 919; S. S. White & Co. v. Hertzberg, 51 S. W., 355; State v. M., K. & T. Ry. Co., 91 S. W., 214; Session Laws, 1903, p. 19; Gust Feist v. Albertype Co., 109 S. W., 1139. When two tenants contract for possession, both renting the premises, and one of the tenants is in possession, this is not a delivery of possession to the other tenant. Where there is written consent to sub-lease, and under such consent the lessee sublets, and the landlord accepts such sub-lessee as tenant and collects rents from him, then such sub-lessee takes the place of the original tenant. Gulf, C. & S. F. Ry. Co. v. Settegast, 15 S. W., 228; Moore v. Graham, 69 S. W., 200; Menger v. Ward, 30 S. W., 853. The trial court erred in refusing to give in charge to the jury plaintiff's special requested charge No. 4. Ascarete v. Pfaff, 78 S. W., 974; Loustaunau v. Lambert, 20 S. W., 940; Gulf, C. & S. F. Ry. v. Settegast, 15 S. W., 228; Sexton v. Chi., etc., Co., 21 N. E., 920; 7 Am. & Eng. Ann. Cases, 539.

*Cooper & Stanford,* for appellee.

CONNER, CHIEF JUSTICE.—Appellee instituted this suit in the County Court against R. R. Wheatley and W. G. Lanier for the sum of three hundred and seventy-five dollars alleged to be due upon a certain rental contract set out in the petition. Appellants pleaded in defense that the rental contract upon which the suit was based was prohibited by the anti-trust law, and further that possession of the leased premises had never been delivered to them. The trial resulted in a ver-

dict and judgment in appellee's favor for the sum of two hundred and seventy-five dollars.

We will first address ourselves to a determination of the validity of the contract. It was executed by appellee and the appellants on the 29th day of July, 1908, at Amarillo, Texas. Thereby appellee agreed to lease to appellants "for the period of one year commencing the first day of September, 1908, lot 10, block 1, of the Holland Addition to the city of Amarillo, known as the 'Stag Saloon,'" for which appellants agreed to pay in advance the sum of seventy-five dollars per month during the life of the lease, the first payment to be made September 1, 1908, and on the first of each successive month thereafter. The lease, together with other stipulations not necessary to notice, further specially provides:

"It is furthermore expressly agreed that the party of the first part shall not lease, rent or let any property or premises which he may own on said First Street to any party or parties or corporation for the sale of intoxicating or non-intoxicating malt liquors, and the party of the first part hereby binds himself in the sum of the amount of the rentals herein agreed to be paid, to prohibit the sale of all such drinks as Uno, Ino, Frosty, Tin-top, Tee-totle and all other brewery products in any building or on any premises which he may own on said First Street, and should such conditions be breached and such sales be permitted, then it is agreed that the annual lease value of this contract shall be forfeited to the parties of the second part as liquidated damages."

Appellants' contention is to the effect that the provision quoted evidences a combination between the parties to the instrument to carry out restrictions and lessen competition in the sale and purchase of commodities violative of our anti-trust statutes, and that hence the court committed error in instructing the jury, as he did, that the contract was valid.

The Act of the Legislature relied upon (General Laws of Texas, 1903, page 119) so far as here pertinent forbids "a combination of capital, skill or acts" by two or more persons for either of the following purposes: "1. To create or which may tend to create or carry out restrictions in trade or commerce or aids to commerce, or in the preparation of any product for market or transportation, or to create or carry out restrictions in the free pursuit of any business authorized or permitted by the laws of this State. . . . 3. To prevent or lessen competition in the manufacture, making, transportation, sale or purchase of merchandise, produce or commodities, or the business of insurance, or to prevent or lessen competition in aids to commerce, or in the preparation of any product for market or transportation."

We have concluded that in no true sense can it be said that the designated provision of the contract constitutes a combination of capital or skill between appellee and the appellants within the meaning of the anti-trust Act from which we have quoted. For a stated rental appellants became the purchasers of a leasehold estate in the premises described in the lease, and during its continuance they were as truly

entitled to the exclusive use and possession of the premises as if they had purchased the fee simple title. The lease provided for no right of control on appellee's part, for no participation by appellee in the profits or losses of the business to be conducted in the leased premises, or for a combination of any kind other than such as may lawfully occur between any vendor and vendee of an estate in land. In these particulars the case is distinguishable from that of the Texas & P. Coal Co. v. Lawson, 89 Texas, 394, and other similar cases cited by appellants. Such transactions we can not think fall within the inhibitory features of the anti-trust Act under consideration. In no proper sense does the contract tend to "create or carry out restrictions in trade," or "in the free pursuit of any business authorized or permitted by the laws of this State," or "prevent or lessen competition in . . . the sale or purchase of merchandise." In construing the anti-trust Acts of 1889-1895 (Revised Statutes, art. 5313), which, in the particulars under consideration, are substantially the same as the Act of 1903, our Supreme Court said:

"The plaintiff bought defendant's goods, together with the good will of his business, both of which were subjects of purchase and sale, and in order to render the sale of the good will effectual the seller agreed that he would not for one year thereafter do a like business in that town. This was but a kind of covenant or warranty that the purchaser should have the use and benefit of such good will during that year, for it is clear that if the seller had immediately engaged in a like business at the same place the purchaser would have had no benefit therefrom. By this transaction neither the capital, skill, nor acts of the parties were brought into any kind of union, association, or co-operative action. The purchaser became the owner of the things sold and the seller was by the terms of the contract restrained from doing a thing which if done would have defeated in part the effectiveness of the sale." Gates v. Hooper, 90 Texas, 563.

The case here cited is one upholding the validity of an agreement by the seller of a stock of merchandise not to engage in the business of merchandising in a certain town for twelve months, and the court further say: "In order to constitute a trust within the meaning of the statute there must be a 'combination of capital, skill or acts by two or more.' 'Combination' as here used means union or association. If there be no union or association by two or more of their 'capital, skill or acts' there can be no 'combination' and hence no 'trust.' When we consider the purposes for which the 'combination' must be formed to come within the statute, the essential meaning of the word 'combination,' and the fact that a punishment is prescribed for each day that the trust continues in existence, we are led to the conclusion that the union or association of 'capital, skill or acts' denounced is where the parties in the particular case designed the united co-operation of such agencies, which might have been otherwise independent and competing, for the accomplishment of one or more of such purposes."

These conclusions have application here. As before stated, there was no "combination" of any kind other than such as occurs in every sale.

As well might it be said that the vendor or lessor becomes a *particeps criminis* in an unlawful use of the property by the mere fact of thus affording the vendee or lessee the means or opportunity for the prohibited use. Appellee's agreement not to lease any of his other property on the same street was a mere inducement to secure a renter or an enhanced rental and in no public or prohibited sense can be said to prevent competition. All other parts of the city and of First Street and all other persons are unaffected by the agreement. By the laws of this State no person was "authorized or permitted" to engage in any kind of business on property owned by appellee without his consent. No law, save for a public use, could compel a consent. It was appellee's right to give or withhold as he preferred, and it is upon this ground that the Court of Appeals for the Sixth District affirmed the validity of a contract by the owner of a plantation giving another the exclusive privilege of selling merchandise thereon. See Redland Fruit Co. v. Sargent, 51 Texas Civ. App., 619 (113 S. W., 330). So, too, our Supreme Court in the case of Ft. Worth & D. C. Ry. Co. v. State, 99 Texas, 34, upheld the contract of the railway company giving the Pullman Palace Car Company the exclusive right to operate its cars over the railway company's lines. The case last mentioned cited with express approval the case of Lewis v. Weatherford, M. W. & N. W. R. R. Co., 36 Texas Civ. App., 48, wherein this court maintained the right of the railway company to grant to a certain person the exclusive right to go upon its trains to solicit business. We think the reasoning of the cases mentioned, together with the authorities therein cited, are conclusive against appellants' contention herein on the question we have discussed.

The only remaining question that requires notice is involved in the assignment challenging the court's action in refusing to give in charge to the jury appellants' fourth special instruction, which is as follows: "If you find from the evidence that defendant Wheatley, with the consent of plaintiff, assigned his original lease contract to another party, that is, the contract entered into in May, 1907, to last until September 1, 1908, then you will find for the defendants."

It appears in the evidence that in May, 1907, appellee had leased the premises in controversy to appellant Wheatley for a term ending September 1, 1908, and that Wheatley, with appellee's consent, had subleased or transferred the term to one, Burnam, who was doing business in the leased house at the time of the execution of the lease in controversy, and who after September 1, 1908, refused to surrender possession to appellants. The court in one paragraph of his charge instructed the jury, in effect, that if at the time of the execution of the lease in question the plaintiff had the right of possession or agreed with either of defendants to deliver possession, the verdict should be for them. It is not undisputed, however, that appellee at the time had the right of possession, and there is no evidence that he agreed to deliver it. Appellants' own testimony is not clear as to whether Burnam occupied the premises as an assignee of the entire term or merely as a subtenant of appellant Wheatley, and appellee testified to appellants' declarations, which were

not denied, that he, Wheatley, already had possession at the time of the making of the lease now considered. In this condition of the evidence we think the court properly and sufficiently submitted the issue to the jury.

We conclude that all assignments of error should be overruled and the judgment affirmed.

*Affirmed.*