## CELLI & DEL PAPA v. GALVESTON BREWING CO.   (No. 116–2978.)

(Commission of Appeals of Texas, Section B Feb. 23, 1921.)

1. Monopolies ⬅➡17(2) — Lease prohibiting lessee from selling goods of lessor's competitor not violation of anti-trust laws.

A brewing company could stipulate as a condition of its lease to a saloon keeper that the saloon keeper should not sell a competitor's beer; such agreement not violating the anti-trust laws.

2. Monopolies ⬅➡12(1)—Inducing another not to deal with third person not unlawful.

It is not unlawful to induce another not to deal with a third person, provided that contractual rights of third person are not interfered with.

3. Monopolies ⬅➡17(2)  Threat not to renew lease if lessee purchased goods from competitor not wrongful.

Landlord's threat not to renew lease if lessee purchased goods from lessor's competitor held not unlawful, since such threat was but the exercise of a legal right on the part of the lessor which cannot form the basis of liability in suit against the landlord by the competitor.

4. Monopolies ⬅➡28—Threat to foreclose if mortgagor continued to sell goods of competitor not actionable in absence of showing of damages.

Mortgagee's threat to foreclose mortgage if mortgagor continued to sell goods of mortgagee's competitor did not entitle the competitor to recover damages in absence of showing that he lost any business by reason thereof.

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Error to Court of Civil Appeals of First Supreme Judicial District.

Suit by Frank Celli and O. Del Papa, composing the firm of Celli & Del Papa, against the Galveston Brewing Company. Judgment for defendant, affirmed by the Court of Civil Appeals (186 S. W. 278), and plaintiffs bring error. Judgments of district court and Court of Civil Appeals affirmed.

Marsene Johnson, Roy Johnson, and Elmo Johnson, all of Galveston, and Chas. L. Black, of Austin, for plaintiffs in error.

J. B. & Chas. J. Stubbs, of Galveston, and Marion Levy, of Dallas, for defendant in error.

McCLENDON, J. Celli & Del Papa, a co-partnership, engaged in the business of wholesale liquor dealers at Galveston, Tex., brought this suit against the Galveston Brewing Company to recover damages, actual and exemplary, for alleged malicious acts of the defendant in inducing customers of plaintiffs to cease purchasing from plaintiffs. The trial court upon a directed verdict rendered judgment for defendant, which judgment the Court of Civil Appeals affirmed. 186 S. W. 278.

The question presented here is the correctness of the trial court's action in directing a verdict for defendant.

The opinion of the Court of Civil Appeals contains a fair statement of the testimony. In the conclusion we have reached we deem the following statement sufficient:

Plaintiffs were wholesale liquor dealers at Galveston, and had the agency for and sold to the trade in Galveston a brand of beer known as "Cook's beer." Defendant was a corporation, engaged in the manufacture and sale of beer, and for the purpose of facilitating its business either owned, leased, or otherwise controlled a number of saloons located in various parts of the city of Galveston. These saloons were rented from month to month to saloon keepers, most of whom were of the Italian race, and some of whom were either related to or former fellow townsmen in Italy of one or other of the plaintiffs. Shortly before June, 1913, the plaintiffs began to sell "Cook's beer" to the tenants of defendant, and during the months of June, July, and August, 1913, defendant, through its manager, induced a large number of its tenants to discontinue the sale of "Cook's beer" upon premises rented from defendant, and in a large number of instances induced its tenants to cease purchasing other liquors from plaintiffs. In most instances the acquiescence on the part of the tenants to discontinue business with plaintiffs was induced by a threat to discontinue their leases. The evidence was sufficient to warrant a finding that plaintiffs' business suffered as a consequence of this action on the part of the defendant.

It is the contention of plaintiffs that these acts of defendant constituted an actionable wrong, both under our anti-trust statutes and at common law. The holding of the Court of Civil Appeals was to the effect that no cause of action was presented by the evidence because of the right of defendant as owner of the rented premises to agree with its tenants as to the use to which the leased premises should be put, as being one of the inherent rights incident to the ownership of real property, which right was restricted only to the extent of forbidding agreement to use the property for an unlawful purpose.

[1] We have reached the conclusion that this holding of the Court of Civil Appeals should be sustained. Conceding, for the purposes of this case, that the circumstances as above outlined warrant the inference of an agreement or combination between defendant and its tenants to boycott plaintiffs, and that ordinarily such combination would come within the inhibitions of those provisions of our anti-trust laws against agreements in restraint of trade, the circumstance that defendant was engaged in the manufacture and sale of beer, and was the owner, lessor, or otherwise had control of the premises to which alone the agreement or combination complained of had reference, brings this case within the well-recognized exception to the general rule which would render such agreement or combination unlawful under the anti-trust statutes. Railway v. State, 99 Tex. 34, 87 S. W. 336, 70 L. R. A. 950; Redland Fruit Co. v. Sargent, 51 Tex. Civ. App. 619, 113 S. W. 330; Lewis v. Ry., 36 Tex. Civ. App. 48, 81 S. W. 111 (writ of error refused); Wheatley v. Kollear, 63 Tex. Civ. App. 459, 133 S. W. 903; Anderson v. Rowland, 18 Tex. Civ. App. 460, 44 S. W. 911; Edwards v. Old Settlers' Ass'n (Civ. App.) 166 S. W. 423 (writ of error refused).

The following quotation from the Redland Fruit Co. Case above is a clear annunciation of the rule governing in this class of cases:

"We do not think it was the purpose of the statute to prevent the making of exclusive contracts of every kind. Such an inhibition would be productive of a greater evil than that which the law attempts to remedy. The business competition which cannot be restricted is that which under the 'laws of the state a person is permitted or authorized' to engage in. The privilege of selling goods upon the premises of another is not derived from the laws of the state, but from the consent of the owner."

We think it cannot be denied that the defendant, in the furtherance of its business, had the legal right to impose upon its tenants, as a term of its lease contracts, an inhibition against selling the goods of a competitor upon the rented premises; and we think it clearly follows that defendant was within its rights in requiring its tenants to cease selling upon the rented premises the wares

.of its competitors, as a condition precedent to the renewal of the rental contracts:

It is urged by plaintiffs that, because the agreement to boycott plaintiffs was not confined to beer, in which alone defendant dealt, the agreement was illegal as to all merchandise other than beer dealt in by plaintiffs. We are not impressed with the force of this contention. The right of defendant to restrict the use of its premises by lease agreements was absolute, except as it might be limited by considerations of public policy. But, aside from this, a limiting of the rights of defendant in a restriction of this character to the furtherance of its own business cannot be said to be infringed merely because the restriction is not confined to the particular article dealt in by defendant. If the right existed to prevent the sale of an article upon the premises, which would have constituted a direct competition with defendant, we think, as an incident to that right, and in order to secure to defendant the full advantage of the right to develop its own business upon said property, such right should be held to embrace the further right to prevent the sale of any wares of a competitor upon said premises. Especially should this be true where such other wares are of a similar character to those dealt in by the landlord.

[2] The same considerations which would deny liability for the acts complained of under the anti-trust statutes prevent recovery under the common law. Aside from these considerations, in the absence of the anti-trust statutes, we believe it would have been competent, irrespective of the relation of landlord and tenant, for defendant and his tenants to have made the agreements complained of. The rule seems to be quite generally followed that an agreement not to have business relations with another is not an actionable wrong if the object sought to be obtained is lawful. 5 R. C. L. 1096, and cases there cited. The same rule applies to inducing third parties not to deal with another. So long as the object in view is to serve the legitimate interests of the persons acting, and the means employed in the accomplishment of that end are not in themselves unlawful, no actionable wrong exists, although the effect of such acts is injurious to the interests of the party against whom they are directed. This rule is subject to the well-recognized exception that the agreements or acts complained of must not interfere with contractual rights. Raymond v. Yarrington, 96 Tex. 443, 72 S. W. 580, 73 S. W. 800, 62 L. R. A. 962, 97 Am. St. Rep. 914.

The leading case upon this subject appears to be Bohn Mfg. Co. v. Hollis, 54 Minn. 223, 55 N. W. 1119, 21 L. R. A. 337, 40 Am. St. Rep. 319. That case announces the following propositions:

(1) The fact that the result of an act may be detrimental to another does not of itself render the act actionable.

(2) If the act be lawful, an improper motive does not render it unlawful. "Malicious motives make a bad case worse, but they cannot make that wrong which in its own essence is lawful."

(3) To maintain an action, plaintiff must show that defendant has committed some unlawful act which would interfere with some right of plaintiff.

(4) What one man may lawfully do singly, two or more men may lawfully agree to do jointly. The number uniting to do the act cannot change its character from lawful to unlawful.

(5) It is perfectly lawful for any man, not bound contractually to the contrary, to refuse to work for or deal with any man or class of men, as he sees fit, and as a corollary to proposition 4 above the combination of more than one man to the same end is not unlawful.

[3] These principles, we believe, are quite generally accepted. Whatever exceptions may exist have no application to the case at bar. Viewed from the standpoint of defendant's position, and regarding defendant as the prime actor in procuring the boycott, the only element in the nature of coercion, or which would tend to render the agreements in any respect involuntary, was the threat not to renew the leases; and, as we have shown above, this threat was but the exercise of a legal right on the part of defendant, which cannot form the basis of liability.

[4] It is also contended that the evidence shows that one Cook was not a tenant of defendant, but that defendant held a mortgage upon the premises leased by Cook, and he was induced to quit trading with plaintiffs under the threat of foreclosure. The evidence is not clear as to the exact relation between defendant and Cook. It is clear, however, that defendant held a mortgage upon the premises, and the evidence strongly tends to show that defendant controlled the leasing of the premises to Cook. However that may be, Cook, who was a witness called by plaintiffs, and whose evidence was not controverted, testified that the defendant's manager never threatened to put him out for any cause; that the manager asked him if he handled "Cook's beer," and, upon being answered in the affirmative, said that he did not think it right for a man in one of defendant's houses to handle "Cook's beer." He further testified that he did not discontinue his patronage of plaintiffs. As to this witness, even conceding that he did not occupy the relation of tenant to the defendant, plaintiffs' case wholly fails, because there is no showing that plaintiffs lost any business from this source.

We conclude that the judgments of the district court and Court of Civil Appeals should be affirmed.

PHILLIPS, C. J. The judgment recommended in this case by the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.