### GRIFFIN v. PALATINE INS. CO. et al.
### (No. 187-3232.)

(Commission of Appeals of Texas, Section B.
Nov. 30, 1921.)

1. Conspiracy ☞1—Insurance companies maliciously inducing other companies not to insure liable.

Where two or more insurance companies maliciously cancel their policies, and thus induce other companies not to insure a third party, resulting in his being unable to obtain insurance and greatly impairing his credit, no useful purpose of the inducing parties being subserved, they are guilty of an actionable wrong, even though they do not actively persuade or induce the other companies not to insure.

2. Conspiracy ☞11—Law of qualified privilege held inapplicable in conspiracy action.

In action against insurance companies who had maliciously induced other companies not to insure plaintiff, court did not commit error in refusing a special charge upon the law of qualified privilege, as related to reports made by adjusters to the defendants in which libelous statements were made concerning plaintiff.

3. Partnership ☞55—Evidence held insufficient to establish alleged partnership.

In action against alleged partnership, where such relation was denied under oath, evidence held insufficient to show such relation.

4. Partnership ☞44—Burden on plaintiff in suit against alleged partnership to prove the relation denied under oath.

Burden is on plaintiff, in action against an alleged partnership, which relation is denied under oath, to establish such relation.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by John E. Griffin against the Palatine Insurance Company and others. From a judgment of the Court of Civil Appeals (202 S. W. 1014) reversing a judgment for plaintiff, he brings error. Judgment of Court of Civil Appeals reversed, and that of District Court affirmed, except as to one defendant, in whose favor judgment is rendered.

Kimbrough, Underwood & Jackson, Reeder & Dooley, and Madden Trulove, Ryburn & Pipkin, all of Amarillo, for plaintiff in error. Andrews, Streetman, Burns & Logue, of Houston, and Thompson, Knight, Baker & Harris, of Dallas, for defendants in error.

McCLENDON, P. J. This action was brought by John E. Griffin against a number of fire insurance companies, William P. Cassell, state agent of one of defendant companies, the National Union, and R. L. Cole and others, alleged to be partners under the firm name of Bates Adjustment Company, to recover damages alleged to have been the result of a conspiracy formed by defendants to render it impossible for plaintiff to obtain fire insurance upon his stock of goods, and thereby destroy his business as a retail grocer. In the trial court, upon a special issue verdict, plaintiff recovered $7,500 actual and $5,000 exemplary damages. This judgment was reversed by the Court of Civil Appeals, and the cause remanded to the district court for further trial. 202 S. W. 1014.

Each of the defendant companies filed some 80 or more assignments of error in the trial court. The Court of Civil Appeals did not pass specifically upon each assignment of error, but announced certain conclusions of law, and sustained all assignments in harmony with and overruled all at variance with those conclusions; the effect of the holding of that court being to pass upon all assignments of error.

The only issues raised in the Supreme Court are those presented in the application for writ of error, which question the correctness of those rulings of the Court of Civil Appeals which were adverse to plaintiff. We have only for determination, therefore, the correctness of the rulings of the Court of Civil Appeals upon which reversal of the trial court's judgment was based. Those rulings do not involve the sufficiency of the pleadings, and they question the sufficiency of the evidence in one respect only, namely, its sufficiency to support a finding that the defendant corporations were chargeable with the circulation of false statements regarding plaintiff. It is therefore not necessary that the testimony be set forth in much detail. A full statement is given by the Court of Civil Appeals.

Stated succinctly, the cause of action alleged by plaintiff was one for malicious injury to his business by creating a situation under which he could not procure fire insurance on his stock of goods; that injurious situation being brought about by concerted action of the defendant companies in canceling and refusing to write insurance upon his stock, and in the circulation of false statements regarding him.

The following outline of the facts will, we think, suffice for present purposes. To quote from the opinion of the Court of Civil Appeals:

"Griffin had a fire in his grocery store on the night of April 20, 1913, the origin of which was unknown. The defendant insurance companies had insurance policies on the stock and fixtures, which were damaged by this fire. The Bates Adjustment Company, which is alleged to be a partnership composed of the defendants L. R. Cole, E. W. Roberts, and others, the said Cole and Roberts being the only members of said organization served and answering, was engaged as an independent insurance adjuster, accepting employment as might be offered by insurance companies in

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the adjustment of claims, etc. The defendant insurance companies, except the National Union Fire Insurance Company, employed the said Bates Adjustment Company to represent them in the adjustment of the claim, resulting from the fire, the companies acting independently of each other in this employment; L. R. Cassell, the state agent for the defendant National Union Fire Insurance Company, represented it in the adjustment of said loss.

"The adjusters Cole and Cassell, who resided in Dallas, met in Amarillo about April 23d for the purpose of proceeding with the adjustment of said fire loss. The evidence in support of the verdict justifies the conclusion that they took an arbitrary and unreasonable attitude in the negotiations for settlement, offering Griffin much less than he was entitled to in settlement, and informing him that if he did not settle their way he would never get any more insurance. The evidence is also sufficient to show that Cole might have held some ill will against Griffin on account of a disagreement over settlement of loss in a previous fire. Griffin declined to settle their way, and Cole, on April 28th, 29th, and 30th, reported by letter to the insurance companies employing him."

These reports, which are copied in full by the Court of Civil Appeals, contain statements, which if untrue, were libelous; but, as we deem the issue of circulating false statements concerning plaintiff unessential to our conclusions, it is not necessary to refer more specifically to these reports. There followed several conferences between Cole, Cassell, and Griffin, in some of which insinuations were made by Cole and Cassell that the fire looked strange and some abusive language was indulged in by Griffin in retort; and Griffin was told that if he got on the "blue book" he would never get off. No amicable agreement was arrived at, and the loss was finally adjusted by appraisement provided for in the policies.

[1] All of the defendant companies canceled their policies with Griffin, and refused to write him further. Griffin made repeated efforts to insure in other companies, but failed, except in one or two instances, and in each of these the policy was canceled in a few days. There is a mass of testimony upon this phase of the case, but it would serve no purpose to state it. We think the evidence and reasonable inference that might be drawn therefrom was sufficient to support the finding that the action of defendant companies in canceling their policies and refusing plaintiff further insurance was concerted, malicious, and to subserve no lawful purpose of their own, and that it brought about a situation in which plaintiff was unable to procure fire insurance from any source, with resultant damage to his business. We do not construe the decision of the Court of Civil Appeals to be in conflict with this view. The effect of that decision is that the defendants had the legal right, even if actuated solely by malice and to serve no useful purpose of their own, to form and carry out a conspiracy to injure the plaintiff in his business by refusing to have business dealings with him. We do not concur in this view. Conspiracy or combination to affect injuriously the business of another has been the subject of much litigation both in this country and in England. The question has been presented in many phases, and has resulted in much divergence of view by courts of last resort. A full review of the authorities would be an endless task, and even a cursory review of those of other states would extend this opinion unduly, and serve no useful purpose. It will not be necessary, we think, to do more than refer to some of the more important cases in this state.

The Court of Civil Appeals has discussed very ably many of the leading authorities upon this question; and the conclusions reached by that court seem to be rested in the main, if not entirely, upon the construction which that court places upon Delz v. Winfree, 80 Tex. 400, 16 S. W. 111, 26 Am. St. Rep. 755, Olive v. Van Patten, 7 Tex. Civ. App. 630, 25 S. W. 428, and Brown v. Mortgage Co., 97 Tex. 599, 80 S. W. 985, 67 L. R. A. 195, and principally upon the first two of these decisions. There are some expressions in those two decisions which might lead to the conclusion that an agreement of two or more parties not to have business relations with a third party, although inspired by malice alone, and carried out with resultant injury, is not actionable, even if it have no legal justification as subserving a lawful interest of the agreeing parties. It is not necessary, however, for us to decide that question. In each of those cases, the issue arose upon the propriety of the action of the trial court in sustaining a general demurrer to plaintiff's petition, and it was held in each case that the trial court's action was erroneous because the petition alleged, not only that the defendants by concerted action refused to have business dealings with the plaintiff, but because they also induced a third party not to deal with him; the holding being that, irrespective of any agreement between the defendants, the action of the one defendant in inducing another not to have business dealings with the plaintiff, where such action was malicious and had no justification in law, in that its purpose was not to subserve any legitimate interest of the inducing party, was an actionable wrong. The apparent holding in those opinions, that the element of inducing a third party not to have business relations with plaintiff was essential to the cause of action, was probably not necessary to a decision of either case; and it may be that those deci-

sions should not be regarded as authority upon that question. However, those decisions are distinctly authority for the proposition that to induce one not to have business relations with a third party is an actionable wrong where the motive for such inducement is malice and where no useful purpose of the inducing party is subserved.

In the Brown Case, the defendants were competitors of plaintiffs, and were directly interested in securing plaintiff's customers for themselves. Consequently, so long as the defendants used lawful means in inducing the plaintiff's customers to cease business with plaintiffs, their own interest as competitors was a legal justification for their acts; and they were held liable in that case only because the means employed were unlawful, those means being, as claimed under one phase of the present case, the circulation of false reports concerning the plaintiffs. The court in that case speaking through Associate Justice Brown, say:

"It can hardly be said that the purpose of breaking a man down in business and driving him out of business is a lawful purpose, even when accomplished by lawful means. The best that can be said of such transaction is that the law affords no remedy for such wrong."

It must be borne in mind that the language was uttered with reference to the particular facts of that case; namely, that the defendants were competitors of plaintiffs, and as such had a lawful purpose to subserve in acquiring plaintiffs' customers, and therefore, although their further purpose to ruin plaintiffs' business was not necessarily lawful, still, in view of the justification resulting from the benefits which might accrue to their own business, the law afforded no remedy for the evil effects of their acts so long as those acts were not in themselves unlawful. This same view was taken in the recent case of Celli v. Brewing Co., 227 S. W. 941, where it was held that to induce tenants of the defendant, who were also defendant's customers, not to purchase from plaintiffs was not actionable at common law, since it was justified in law from two standpoints: (1) Because defendant had a right to prescribe what business should be conducted upon the premises which it had leased to its tenants; and (2) because the benefits to accrue to defendant in its own business was a legal justification for its acts. In the Celli and Brown Cases, the purpose to build up one's own business by acquiring the customers of a competitor was recognized as legitimate; and where such purpose existed, and the means for attaining it were not in themselves illegal, the holding was that the law would not take into account the fact that the defendant entertained malice toward the plaintiff. The following from

Bohn v. Hollis, 54 Minn. 223, 55 N. W. 1119, 21 L. R. A. 337, 40 Am. St. Rep. 319, was quoted with approval in the Celli Case:

"If an act be lawful, * *. * an improper motive does not render it unlawful. * * * 'Malicious motives make a bad case worse, but it cannot make that wrong which, in its own essence, is lawful.'"

Our conclusion is that a combination of two or more persons, the purpose of which is to destroy or injure the business of a third person, is in itself unlawful; and where there is no legal justification, it is actionable if carried out, and if it result injuriously to the party against whom it is directed. Leaving out of consideration the alleged acts which were not in themselves illegal, and of which the Court of Civil Appeals held there was no evidence—namely, the circulation of false reports—the case presented by evidence sufficient to establish it and by findings of the jury is, in substance, that the defendants first endeavored to coerce plaintiff into making a settlement of his loss advantageous to themselves, by threatening him with what amounted to a boycott, and when that failed they combined to destroy his business by refusing to write insurance for him, and thereby created a situation which made it impossible for him to procure insurance, the inevitable effect of which was to destroy or greatly impair his credit, and prevent him from venturing his own capital in his business; and that this illegal purpose had no justification in law, as no legitimate interest of defendants was intended to be subserved thereby. That this conduct was in law wrongful and actionable follows from the cases cited.

The Court of Civil Appeals seem to be of the view that, so long as defendant companies did not actively persuade or induce other companies not to write insurance for plaintiff, no cause of action could arise, and upon that holding sought to distinguish the present case from Delz v. Winfree and Olive v. Van Patten. As above stated, it is not necessary to determine whether the concerted action of defendant companies in canceling their own policies and refusing to insure plaintiff would be actionable, if its effect had been only to prevent plaintiff from being insured in defendant companies. It is quite clear from the present record that injury to plaintiff's business, if any at all, would have been slight if defendant companies had been the only companies in which he could not procure insurance; the injury to his business consisting chiefly, if not solely, in the fact that plaintiff was unable to obtain insurance from any source. It is true, as found by the Court of Civil Appeals, that the evidence does not preclude the possibility that this might have been brought about by

independent causes; but that was an issue of fact which the jury determined adversely to defendants, and their finding must be controlling here, in the absence of a contrary finding by the Court of Civil Appeals.

The fact, supported by evidence and found by the jury, remains that a situation was brought about by the concerted action of defendants in canceling their policies and refusing to insure plaintiff under which plaintiff was unable to procure insurance from any source. We do not think it essential, to support an action against defendants for bringing about that condition, that they should have actively persuaded or induced other companies not to insure plaintiff. It was only necessary that their concerted action be from purely malicious motives, with no justification in law, and that it produce injury as a natural result.

These conclusions are in full accord with those expressed by the Supreme Court in granting the writ in this case in the following concise and forceful language:

"A man may lawfully refuse to have business relations with another for any reason—on account of whim, caprice, prejudice or ill will. He may lawfully induce others to refrain from having business relations with such third person. though it injuriously affects such person, provided his action be to serve some legitimate interest of his own, as reducing the competition of such third person's business, and no definite legal rights of the latter, such as contract rights, are thereby violated. He cannot lawfully, however, go beyond this in inducing other persons to refrain from business relations with a third person, since his purpose in such event would not be for his own protection, but for another's injury, and would necessarily amount to a malicious or wanton interference with another's business. In such cases, therefore, the motive must determine the lawfulness of the act.

"So here, while the defendants, either severally or in concert, could lawfully refrain from writing insurance for the plaintiff, whatever might be their reason for such action, if their purpose was to do no more than to exercise that privilege, yet if their purpose was not this legitimate one, but went beyond it, and was to bring about a condition that in its natural result would destroy or seriously injure the plaintiff's business, we think their action would lose its lawful character, and would amount to a malicious interference with his right of freedom in his business. It would be the intentional causing of loss to another without justifiable cause, amounting to a malicious purpose to inflict it, which, in law, is a wrong."

The above conclusions render unnecessary a decision of the question whether the acts complained of fall within the inhibition of our antitrust statute, or whether the Court of Civil Appeals correctly held that the evidence failed to support a finding that defendant companies were chargeable with circulating false statements concerning plaintiff.

[2] Under subdivision 12 of the opinion of the Court of Civil Appeals, 202 S. W. 1025, 1026, that court held that the trial court committed error in refusing a special charge upon the law of qualified privilege as related to reports made by Cole to the several companies he represented, in which reports libelous statements were made concerning plaintiff. As we have held, this was not an action for slander or libel, and the reports were in no sense the bases of plaintiff's suit. We are unable to see what bearing the question of qualified privilege, as related to these reports, could have upon any issue in this case. The reports were not referred to in the charge, and no contention was made that plaintiff was seeking to recover either against Cole or any of the defendants for these communications. We are unable, therefore, to see what useful purpose could be served by enlightening the jury upon the law of qualified privilege as related to slander and libel, when the action was not one for slander or libel, but for creating a situation whereby plaintiff could not procure insurance through the means of canceling policies and refusing to write plaintiff.

[3, 4] The remaining holding of the Court of Civil Appeals adverse to plaintiff is that there was no evidence that Bates Adjustment Company was a partnership, and as partnership was denied under oath by the defendants, alleged to compose the partnership, and cited, they could not be held as partners. This ruling, we think, is correct, and should be sustained. The only evidence of partnership consisted of letter heads of the adjustment company which referred to that concern as "The Bates Adjustment Co., Insurance Adjusters," and gave the names of E. P. Bates, R. L. Cole, E. W. Roberts. and other defendants alleged by plaintiff to compose the partnership. Cole in his testimony denied that the concern was a partnership, and stated that it was owned by E. P. Bates, and that he (Cole) was merely an employee working upon a weekly salary. He also in his testimony, at several places, referred to the adjustment company as "our firm." But these references were evidently loosely made, and should be given no significance in the absence of some affirmative proof that the partnership relation existed, the burden to establish which was cast upon plaintiff by the sworn answer of defendants. Cole was the only defendant alleged to be connected with the Bates Adjustment Company which the evidence in any way tended to connect with the alleged illegal acts.

We conclude that the judgment of the district court in so far as it was against defendant E. W. Roberts should be reversed, and judgment rendered in his favor, and

that as·to all other defendants the judgment of the Court of Civil Appeals should be reversed, and that of the district court affirmed.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.