QUADRO STATIONS, INC. AND ATLANTIC RICHFIELD COMPANY v. JAMES R. GILLEY AND WIFE, SYLVANIA M. GILLEY; WESLEY BAILEY, TRUSTEE; AND THE NORTHWESTERN BANK

No. 7021SC5

(Filed 25 February 1970)

1. **Deeds § 19— restrictive covenants — use of property — competition with covenantee — enforcement**

    Covenants restricting the use of property for purposes competitive with those of the covenantee are generally enforceable where they involve only partial restraints of trade, are founded on sufficient consideration, and are reasonably limited as to duration and area covered.

2. **Contracts § 7— partial restraint of trade — contracts enforceable**

    Contracts in partial restraint of trade are enforceable where (1) they are founded on a valuable consideration, (2) the restrictions imposed are reasonably necessary to protect the legitimate interest of the covenantee, and (3) the limitations or restrictions are reasonable as to time and area.

3. **Deeds § 19— restrictive covenants — consideration — sufficiency of stipulation**

    In action by an oil company seeking injunctive relief against defendants for their alleged violations of a covenant agreement restricting the use of certain property from the sale and advertisement of petroleum products, a stipulation between the parties that the restrictive covenant agreement was part and parcel of the consideration running to oil company's grantor

from the original grantor in connection with the purchase of the property, *held* sufficient to establish that the restrictive agreement was founded on a valuable consideration.

**4. Deeds § 19; Monopolies § 2— restrictive covenants — filling station — protection against competition — enforcement of covenant**

A restrictive covenant between the grantor of a lot and the grantee, the predecessor in title to an oil company, providing that a four-acre tract adjoining the lot will not be used for the sale and advertising of any petroleum products for a period of twenty-five years, which covenant was executed contemporaneously with the conveyance to the grantee of the lot as a site for a filling station, *held* legally enforceable by the oil company and not in violation of the statute prohibiting monopolies and trusts, G.S. 75-5(b)(6), since (1) the covenant was reasonably necessary to protect the oil company's investment in the filling station from future competition on the four-acre tract and (2) the restrictions as to area and duration were not unreasonable or injurious to the public.

**5. Deeds § 19— restrictive covenants — sufficiency of language — negative easement**

An agreement between a covenantor and a covenantee providing that the covenantor, for itself, its successors and assigns, hereby covenants and agrees with the covenantee, its successors and assigns, that a four-acre tract will not be used for the sale or advertisement of any petroleum products, *is held* to impose a negative easement on the tract, and the agreement is enforceable against a subsequent purchaser through *mesne* conveyances from the covenantor.

**6. Deeds § 19— creation of restrictive covenants — prerequisites**

An owner of land may impose upon his land any restrictions that he deems fit, so long as the beneficial enjoyment of the estate is not materially impaired and the public good and interest are not violated.

**7. Deeds § 19— restrictive covenants — enforcement — subsequent purchasers**

Restrictive covenants in a deed are enforceable not only as between original parties but also by subsequent purchasers by *mesne* conveyances even though their deeds contain no reference to the restrictions.

**8. Deeds § 19; Registration § 3— restrictive covenants — notice to subsequent purchasers**

A purchaser of land is chargeable with notice of a restrictive covenant by the record itself if such covenant is contained in any recorded deed or other instrument in his line of title, even though it does not appear in his immediate deed.

**9. Boundaries § 10— description — reference in deed to another deed**

Reference to one deed in another for the purpose of description is equivalent to incorporating and setting out its description in full.

**10. Boundaries § 10— description — evidence of monuments — attorney**

It was proper for an attorney, an expert in local property transactions,

to testify for the purpose of more definitely identifying the monuments contained in the description of a deed.

**11. Deeds § 19— action on restrictive covenant — description of property — sufficiency of court's findings**

In an action by an oil company seeking injunctive relief against defendants for their alleged violation of a covenant agreement restricting the use of certain property from the sale and advertisement of petroleum products for a twenty-five year period, the evidence and the court's findings are sufficient to support the court's conclusion that the description in the agreement adequately described the property restricted.

APPEAL by defendants from *Armstrong, J.,* 29 May 1969 Session of FORSYTH Superior Court.

This action was instituted on 26 June 1967 by plaintiffs seeking injunctive relief against defendants for allegedly violating a covenant agreement restricting certain property from use in connection with the sale or advertising of any petroleum products.

On 19 April 1963 Satterfield Development Company (Satterfield) conveyed by deed to Sibarco Corporation (Sibarco) a certain lot located in Forsyth County. The lot was thereafter conveyed by Sibarco to the plaintiff Quadro Stations, Inc., (Quadro) and leased by Quadro to plaintiff Atlantic Richfield Company for a period of twenty-five years. Also on 19 April 1963 Satterfield and Sibarco entered into a "Restrictive Covenant Agreement" which was recorded in the Forsyth County Public Registry on that date simultaneously with the recordation of the deed. The agreement provided in part as follows:

> "WHEREAS, SATTERFIELD has this day conveyed to SIBARCO premises SITUATE in Southfork Township, County of Forsyth, State of North Carolina, located at the northwesterly intersection of Lewisville Road (also known as Country Club Road) and Peace Haven Road, the deed of conveyance being intended for recording in said Forsyth County Records immediately prior hereto; and
>
> WHEREAS, SATTERFIELD is the owner of lands SITUATE in Southfork Township, County of Forsyth, State of North Carolina, adjoining to the west, north, and northeast, the premises conveyed in the aforesaid deed, fronting approximately 643 feet on Lewisville Road, 85 feet on Peace Haven Road, 125 feet on 'A' Street, and 174.42 feet on Conrad Road; and
>
> WHEREAS, SATTERFIELD has agreed to restrict its said above described lands.

NOW, THEREFORE:

For and in consideration of the sum of ONE DOLLAR ($1.00) by SIBARCO to SATTERFIELD in hand paid, SATTER-FIELD, for itself, its successors and assigns, hereby covenants and agrees with SIBARCO, its successors and assigns, that for a period of twenty-five (25) years from the date hereof, said lands shall and will not be used or permitted to be used, directly or indirectly, for the sale or advertising of any petroleum product, nor for the display of any trademark, trade name or symbol characteristic of any petroleum product supplier or marketer; . . ."

Defendants are the owners of a lot adjoining plaintiffs' property and acquired from Satterfield through *mesne* conveyances made subsequent to 19 April 1963. It is with respect to the use of this lot that plaintiffs seek the enforcement of the restrictive covenant agreement.

By consent of the parties the trial court heard the evidence, made findings of fact and conclusions of law. Judgment based thereon was rendered for plaintiffs, and defendants, their successors and assigns were enjoined from any further violation of restrictions contained in the agreement. Defendants appealed assigning error.

*Hatfield, Allman. and Hall by C. Edwin Allman and William C. Myers for plaintiff appellees.*

*Wesley Bailey and White, Crumpler and Pfefferkorn by William G. Pfefferkorn for defendant appellants.*

GRAHAM, J.

Defendants admit the sale and advertising of petroleum products on the lot in question but contend: (1) the restrictive covenant agreement is illegal and unenforceable as an agreement in restraint of trade such as prohibited by the statutes on monopolies and trusts, codified as Chapter 75 of the General Statutes and in particular G.S. 75-5(b)(6); (2) the agreement cannot be enforced against defendants because they were not parties to it; (3) the description of the property covered by the agreement is so vague and indefinite as to render the agreement unenforceable and it was error for the court to admit parole evidence with respect to the description.

We consider the contentions of the defendants in the order set forth above.

(1) G.S. 75-5(b)(6) provides as follows:

"(b) In addition to the other acts declared unlawful by this

chapter, it is unlawful for any person directly or indirectly to do, or to have any contract express or knowingly implied to do, any of the following acts:

(6) While engaged in buying or selling any goods in this State, to have any agreement or understanding, express or implied, with any other person not to buy or sell such goods within certain territorial limits within the State, with the intention of preventing competition in selling or to fix the price or prevent competition in buying such goods within these limits."

[1] Covenants restricting the use of property for purposes competitive with those of the covenantees have generally been held to be enforceable where they involve only partial restraints of trade, are found on sufficient consideration and are reasonably limited as to duration and area covered. *Savon Gas Stations Number Six, Inc. v. Shell Oil Company*, 309 F. 2d 306, (4th Cir. 1962), *cert. denied*, 372 U.S. 911, 9 L. Ed. 2d 719, 83 S. Ct. 725; *Goldberg v. Tri-States Theatre Corporation*, 126 F. 2d 26, (8th Cir. 1942); *Parker v. Lewis Grocer Company*, 246 Miss. 873, 153 So. 2d 261; *Vaughan v. General Outdoor Advertising Co.*, 352 S.W. 2d 562, (1961 Ky.); *Ladd v. Pittsburgh Consolidation Coal Co.*, 309 Ky. 405, 217 S.W. 2d 807; *Gonzales v. Reynolds*, 34 N.M. 35, 275 P. 922; *Vanover v. Justice*, 180 Ky. 632, 203 S.W. 321; *Wheatley v. Kollear*, 63 Tex. Civ. App. 459, 133 S.W. 903; *Herpolsheimer v. Funke*, 1 N.U. 304, 95 N.W. 687.

Such restrictions are usually subjected to the same tests whether attacked as being against public policy generally or as in violation of a specific anti-trust statute. See for instance the following cases where restrictions were sustained though challenged as violating specific statutes: *Sun Oil Company v. Trent Auto Wash, Inc.*, 2 Mich. App. 389, 140 N.W. 2d 551; *Goldberg v. Tri-States Theatre Corporation, supra; Jackson v. Price*, 140 Miss. 249, 105 So. 538; *Wheatley v. Kollear, supra.*

The rule concerning such agreements is set forth in 6A Corbin on Contracts, § 1389, as follows:

"[T]he owner of a business, who also owns land nearby, may sell or lease such land to a buyer or tenant who promises not to use it for business purposes in competition with that of the seller or lessor. Here, the restriction is limited to the use of the land transferred. Or, the owner of a tract of land or business block may sell or lease a portion thereof to one intending to use it for a particular purpose, making to him an ancillary

promise not to permit the remaining part of the tract or building to be used for a competitive business purpose. . . . These agreements are usually sustained as being reasonable, even though the purpose is to prevent competition and no business good will is being transferred."

In Annot., 46 A.L.R. 2d 119 (1956), we find the following at pages 198, 199:

"It appears to be well settled that the seller or lessor of property (as distinguished from business or good will) may by a reasonably limited restrictive promise agree to refrain from (1) himself engaging in, or (2) from disposing of his property in such a way that others can engage in, a business which would impair the value of the property to the buyer for the purpose for which he intended to use it."

In a later annotation entitled "Lease-Covenant Against Competition" in 97 A.L.R. 2d 4 (1964) the following statements appear at page 11 *et seq.*

"Although the courts will not tolerate unreasonable restraints upon trade, and frown upon restrictions upon the free use of land, there is no doubt of the validity, under ordinary circumstances, of a restriction imposed by a lessor, ancillary to a leasing of part of his property, upon the remainder of the property owned or controlled, . . .

\*      \*      \*

The right of the covenantee to enforce the covenant against one other than the covenantor is subject to little, if any, doubt, in its main areas.

\*      \*      \*

[T]he covenant is enforceable, by way of injunctive relief, as against any subsequent taker of the restricted premises, whether a purchaser or a lessee, where such party takes with notice, either actual or constructive, of the restriction imposed upon the premises under the lessor's covenant."

The case of *Sun Oil Company v. Trent Auto Wash, Inc., supra,* is particularly in point. There the grantor conveyed lots 4 and 5 of a subdivision to plaintiff. In the deed grantor agreed that property owned by her and "lying north of and adjacent to the within described premises" would not be used for a gasoline station or for automotive services generally. She later sold lots 6-9 in the subdivision to defendant. Defendant was restrained from installing gasoline storage and dispensing equipment on the lots. In rejecting de-

fendant's contention on appeal that the agreement violated the Michigan anti-trust statute the court summarily noted that the case law of that state interpreted the statute as prohibiting only unreasonable restraints of trade and that the restrictions imposed were not unreasonable.

**[2]** We find no cases in this State wherein a covenant restricting the use of land (other than in connection with the sale of a business) has been challenged as violating any of the provisions of our anti-trust statutes. However, closely related cases establish that contracts tending only to partially restrain trade are enforceable where: (1) they are founded on a valuable consideration; (2) the restrictions imposed are reasonably necessary to protect the legitimate interest of the covenantee; and (3) the limitations or restrictions are reasonable as to time and area. *Jewel Box Stores v. Morrow,* 272 N.C. 659, 158 S.E. 2d 840; *Buick Co. v. Motors Corp.,* 254 N.C. 117, 118 S.E. 2d 559; *Paper Co. v. McAllister,* 253 N.C. 529, 117 S.E. 2d 431; *Sonotone Corp. v. Baldwin,* 227 N.C. 387, 42 S.E. 2d 352; *Kadis v. Britt,* 224 N.C. 154, 29 S.E. 2d 543; *Moskin Bros. v. Swartzberg,* 199 N.C. 539, 155 S.E. 154. We quote from the opinion of Bobbitt, J. (now C.J.), in *Buick Co. v. Motors Corp., supra,* at p. 125 as follows:

> "Under G.S. 75-1 *et seq.,* as interpreted in *Mar-Hof Co. v. Rosenbacker,* 176 N.C. 330, 97 S.E. 169, and later cases, 'agreements in partial restraint of trade will be upheld when they are "founded on valuable considerations, are reasonably necessary to protect the interests of the parties in whose favor they are imposed, and do not unduly prejudice the public interest." ' As stated by *Allen, J.,* in *Sea Food Co. v. Way,* 169 N.C. 679, 682, 86 S.E. 603: '. . . the true test now generally applied is whether the restraint is such as to afford a fair protection to the interests of the party in whose favor it is given, and not so large as to interfere with the interests of the public.' "

**[3]** The parties stipulated at the trial that the restrictive covenant agreement was a part and parcel of the consideration running to Sibarco from Satterfield in connection with the purchase of the property described in the deed referred to in the agreement. This stipulation is sufficient to establish that the agreement in question was founded on a valuable consideration.

**[4]** On the question of whether the restriction imposed was reasonably necessary to protect the legitimate interest of the covenantee, we note that uncontradicted evidence in the record indicates that Sibarco sought out the lot purchased from Satterfield as a specific

site for a gasoline service station. While Sibarco had no right to insist on an agreement that would generally protect it and its successors and assigns from competition, it is our opinion that Sibarco was protecting a legitimate interest in taking steps through the agreement to assure that its investment would not be substantially impaired by future competition on an adjoining lot. Rather than restraining trade, such agreements may in some instances actually increase business competition. A businessman would naturally be inclined to pass up a location where he has no minimal protection from future "next door" competition, thus leaving similar businesses already located in the general area free from his competition.

We also find the agreement reasonable as to area covered and time. Evidence below indicated and the court found that the area subject to the agreement consisted of less than four acres. Certainly the restriction of such a small area is not unreasonable under the circumstances. On the question of duration we find the following in Annot., 45 A.L.R. 2d 77 (1956), at p. 115:

> "Where the duration of the restraint is limited as to time, the mere length of the period of time during which the restraint is to operate, standing alone, is never sufficient to render the restrictive covenant not to compete ipso facto [sic] unenforceable. This proposition is so well settled that no case has been found that would even intimate a contrary viewpoint."

Such covenants are not unreasonable as to time if their duration is no longer than reasonably necessary to afford fair protection to the covenantee and not so long as to be injurious to the public. *Beam v. Rutledge,* 217 N.C. 670, 9 S.E. 2d 476. See also *Jewel Box Stores v. Morrow, supra,* and cases therein cited.

The covenantee and its successors have a protectable interest for such period of time as they could reasonably be expected to use their property for the purpose sought to be protected by the agreement. A period of twenty-five years is not an unduly long time to expect property purchased for gasoline service station purposes to continue to be applied to such use. In fact, the plaintiff Atlantic Richfield Company is now in possession of the protected property under a twenty-five year lease.

Furthermore, we do not find the duration of the restriction unduly harsh or oppressive to defendants or to the general public. Defendants are not restrained from engaging in a competitive business anywhere in the world save for the four acres covered by the agreement. The only practical effect the agreement could have insofar as

the public is concerned is that it prohibits two or perhaps more service stations from locating side by side in an area consisting of less than four acres. It is hard to see how this could impose any undue inconvenience on the general public. The agreement does not tend to create a monopoly nor does it restrict competition over a general area. Indeed, the record discloses that other service stations are in fact located next to and directly across the street from the one being operated by plaintiff Atlantic Richfield. In *Jackson v. Price, supra,* an owner sold his restaurant business and agreed not to open up or conduct a restaurant business for an unlimited time in the city where the business was located. The court held that the agreement was not against public policy, on the ground that there were other restaurants to which the public could resort. See also *Bradshaw v. Millikin,* 173 N.C. 432, 92 S.E. 161; *Sea Food Co. v. Way,* 169 N.C. 679, 86 S.E. 603.

We hold that the court below properly found the agreement in question legal and enforceable and not in violation of G.S. 75-5(b)(6).

**[5-8]** (2) Defendants' contention that the agreement is unenforceable as to them is without merit. The agreement provides that "SATTERFIELD, for itself, its successors and assigns, hereby covenants and agrees with SIBARCO, its successors and assigns, that . . . said lands shall and will not be used or permitted to be used, directly or indirectly, for the sale or advertising of any petroleum product, . . ." This language clearly evidences an intention on the part of the parties to impose on the land in question a negative easement rather than to enter an agreement personal between themselves. An owner of land may impose on his land any restrictions that he deems fit, so long as the beneficial enjoyment of the estate is not materially impaired and the public good and interest are not violated. 3 Strong, N.C. Index 2d, Deeds, § 19. Such restrictions are enforceable not only as between original parties but also by subsequent purchasers by *mesne* conveyances even though their deeds contain no reference to the restrictions. *Realty Co. v. Hobbs,* 261 N.C. 414, 135 S.E. 2d 30; *Sheets v. Dillon,* 221 N.C. 426, 20 S.E. 2d 344. Furthermore, "a purchaser of land is chargeable with notice of a restrictive covenant by the record itself if such covenant is contained in any recorded deed *or other instrument in his line of title,* even though it does not appear in his immediate deed." (Emphasis added). *Higdon v. Jaffa,* 231 N.C. 242, 248, 56 S.E. 2d 661. The agreement in question was on record and defendants are charged with constructive notice of the restrictions contained therein. *Cummings v. Dosam, Inc.,* 273 N.C. 28, 159 S.E. 2d 513; *Sedberry v. Parsons,* 232 N.C. 707, 62 S.E. 2d 88.

**[9-11]**   (3)   Defendants' final assignments of error relating to the description contained in the agreement are overruled. The property is described in the agreement as being the property owned by Satterfield and adjoining the property conveyed to Sibarco to the west, north and northeast. "Reference to one deed in another for the purpose of description is equivalent to incorporating and setting out its description in full." *Realty Corp. v. Fisher,* 216 N.C. 197, 199, 4 S.E. 2d 518. In addition, the description contained references to four ascertainable monuments and four ascertainable calls. The language used in the description is not so patently ambiguous as to render inadmissible extrinsic evidence in order to fit the description to the land. *Self Help Corp. v. Brinkley,* 215 N.C. 615, 2 S.E. 2d 889. It was not error for the court to permit testimony by an attorney, an expert in local property transactions, for the purpose of more definitely identifying the monuments contained in the descriptions. *Duckett v. Lyda,* 223 N.C. 356, 26 S.E. 2d 918; see *McDaris v. "T" Corporation,* 265 N.C. 298, 144 S.E. 2d 59. The evidence and the court's findings are sufficient to support the court's conclusion that the description in the agreement adequately described the property restricted and applies to the property now owned by defendants and being used by them in violation of the restrictions.

Affirmed.

BROCK and BRITT, JJ., concur.