OLIVE & STERNENBERG V. A. VAN PATTEN ET AL.

No. 615.

1. **Lumber Dealers' Association of Texas—Conspiracy.**—Delz v. Winfree, Norman & Pearson, 80 Texas, 400, adhered to, as to conspiracy and actions for conspiracy. Allegations that the parties composing the "Lumber Association of Texas" had combined for the purpose of maintaining a high price for lumber against citizens of the State, and had maliciously influenced others from dealing with plaintiffs in their business of selling lumber, to their injury, show cause of action.

2. **Same—Measure of Damages.**—Plaintiffs can not recover for any injury except such as results from the wanton and unlawful interference with their business, in influencing third parties not to trade with them, and only for the injury that has occurred.

ERROR from McLennan. Tried below before Hon. L. W. GOODRICH.

*John L. Dyer* and *Clark & Bolinger,* for plaintiffs in error.—Plaintiffs' petition discloses a good cause of action, in that it substantially showed that they were engaged in the legitimate business of manufacturing and selling lumber in the State of Texas, and had an established trade built up therein, of great value, and that defendants unlawfully, wantonly, and maliciously conspired together to injure plaintiffs in their trade and business, and by means of said unlawful confederation and conspiracy, and in pursuance of its plans and by-laws, they

printed, published, and mailed to all the lumber dealers in the State of Texas a circular, or boycott, urging them not to deal with plaintiffs, and admonishing them of their ruin if they did; and by means of said acts and unlawful and wanton interference with their business, that defendants did cause an actual loss and damage to plaintiffs in the sum of $100,000, causing a cessation of their said business, loss of customers, loss of profits, etc.; and that by reason of said wanton, malicious, and unlawful conduct on the part of defendants, plaintiffs were also entitled to exemplary damages; and that for said unlawful conspiracy and interference with the rights and business of plaintiffs, without cause or justification, they were further entitled to an injunction, for all of which they prayed judgment. Delz v. Winfree, 80 Texas, 400; Walker v. Cronin, 107 Mass., 555; Carne v. Rutherford, 106 Mass., 1; Crump v. Commonwealth, 6 S. E. Rep., 620; Coal Co. v. Barclay Coal Co., 68 Pa. St., 173; Steamship Co. v. McGregor, 22 Cent. Law Jour., 303; Oil Co. v. Acme Oil Co., 106 N. Y., 669; 4 Am. and Eng. Encyc. of Law, pp. 583, 592, 605, 608, 609, and authorities cited.

*Alexander & Campbell,* for defendants in error.—1. The acts complained of are alleged to have occurred in May, 1888, which was prior to the enactment of the anti-trust statute of Texas, and this case is not controlled in any manner by that statute. The common law alone is to be looked to for rules and principles governing this case. At common law a conspiracy can not be made the subject of a civil action, although damage result from such conspiracy, unless something is done which, without such conspiracy, would give a right of action. The true test as to whether such action will lie, is whether the act accomplished after the conspiracy is formed is itself actionable. And the only object in alleging a conspiracy is to look beyond the actual participants, and to join in the suit all who conspired to accomplish the act. The conspiracy is nothing, and adds nothing to the amount of damages, and forms no part of the suit except to hold all the conspirators for the acts of less than all done in the pursuance of the conspiracy. The foundation of the action in this case, and in all cases like it, must therefore rest alone upon what is done or said or spoken or written to the injury of plaintiffs by defendants, or any of them. The allegation of conspiracy in this case in particular is of no consequence, because plaintiffs only sue the actual participants, and only seek to hold those who did the acts causing the alleged injury. Delz v. Winfree, 80 Texas, 400.

2. If the defendants are not responsible in damages singly, they can not be held responsible collectively. The defendants are not responsible, individually or collectively, because it clearly appears from the allegations of plaintiffs' petition that defendants issued and published the circular in self-defense, to serve a legitimate purpose of their own;

and protect their business interests against the encroachments of plaintiffs and other wholesalers, using the only lawful means in their power, to wit, a simple statement that plaintiffs and other wholesalers and mill men were selling to others than legitimate dealers, much to the detriment of the regular trade, asking only that they be not patronized by the retail dealer until such time as they would desist; stating further, that many towns had their trade and prices in a demoralized condition on account of this great and growing evil; that the mill men who are doing this kind of business are pushing their trade not only into the larger towns, but are now seeking customers in every cross-road and hamlet where they can find a farmer, merchant, or carpenter who can consume as much as a mixed carload of lumber; to these they will sell as cheap as to the dealer. The circular closes by stating the damages apprehended from a continuance of the aggressions of the wholesaler and jobber. None of the facts stated in the circular are denied by plaintiffs in their petition, nor do plaintiffs pretend that the fears of the defendants as set forth in the circular are groundless. So that defendants' proposition is, that it clearly appears from the petition that said circular was not issued wantonly or maliciously, but was issued in protection of their own rights and business as a legitimate mode of meeting plaintiffs in competition for trade.

3. Before an act can be said to have been wantonly or maliciously done, it must appear to be an illegal act, done purposely to the injury of another, and to have been done without legal or justifiable excuse, and under circumstances which show a lawless and destructive spirit, and must have been done intentionally and by design to injure, and without excuse. Plaintiffs allege in their petition broadly that the acts complained of were done wantonly and maliciously, but plaintiffs allege also the circumstances under which the acts were done, and those very circumstances are shown to be not illegal, but justifiable, and made in self-defense, which negatives the idea of malice. 1 Add. on Torts, pp. 22, 23; Hutchins v. Hutchins, 7 Hill, 107; Kumball v. Harmon, 6 Am. Rep., 340; Cool. on Torts, 126; Rogers v. Dutt, 13 Moore, P. C. C., 241; Young v. Huchins, 6 Q. B., 906; Brown v. Matheson, 15 Allen (Mass.), 499; Payne v. Railway, 20 Cent. Law Jour., p. 7; same case, 13 Lea (Tenn.), 507; 3 Laws. Rights, Rem. and Prac., sec. 1047; Ashley v. Dixon, 8 Am. Rep., 559.

COLLARD, ASSOCIATE JUSTICE. — This is a suit for damages, brought by plaintiffs in error against defendants in error, for maliciously and wantonly inducing dealers in lumber in Texas to withdraw their custom from plaintiffs, who are doing a wholesale and retail lumber business in the State.

The facts set up in the petition are as follows: On the 16th day of May, 1888, and for a long time prior thereto, plaintiffs were owners

of a large and extensive saw mill, in Hardin County, Texas, capable of cutting and manufacturing 12,000,000 feet of lumber annually; of planing mills used in connection with the saw mill; of six miles of well equipped tram railway leading from the mill to their timber lands, suitable to carry logs to the mill; of 8000 acres of heavy pine timber, suitable for the manufacture of lumber, near the mills, from which the timber had not been cut; and of 7000 acres of heavy timbered land contiguous to the mills, from which only a part of the timber had been cut, all suitable for first-class lumber. The plant was worth $270,000, the 8000 acres of timbered land was worth $64,000, and the 7000 acres, $14,000. Of the 12,000,000 feet of lumber, the annual output, plaintiffs were able to make and were making with their mills and preparing for market, they were able to plane upon their planing mills annually 6,000,000 feet of dressed lumber, and all the lumber manufactured they were able to sell at advantageous prices in the markets of the State and elsewhere, making an annual profit of $100,000 up to the time of the interference by defendants.

That defendants, each being engaged in the lumber business in Texas, envying the prosperity of plaintiffs, and seeking to oppress, boycott, and ruin them, and to deter them from selling to actual consumers, and to dissuade and influence dealers in lumber in Texas who had been in the habit of purchasing lumber from plaintiffs, and with the view to advance their own pecuniary and selfish interest, on May 16, 1888, entered into a trust, styled "The Lumber Dealers' Association of Texas," the object of which was to confederate together for the purpose of maintaining a high price for lumber against citizens of the State as consumers, and to conspire against legitimate prices on lumber, and against all persons who sought to reach the demands of legitimate trade by legitimate methods, and to force, by such unlawful confederacy and conspiracy, all mill men and manufacturers of lumber into such unlawful combination or trust, so as the lumber business on the part of mill men or manufacturers of lumber should present a solid array against the consumer and retail dealer, and thus control by means of such trust extravagantly high prices for lumber, for the enrichment of themselves and to the impoverishment of the consumer and small dealer. And so it is charged that defendants became guilty of a conspiracy against the public as well as plaintiffs, such as is unlawful in all its acts in furtherance thereof. That in furtherance of this unlawful design, defendants, as members of the association and as chief members thereof, assembled together about the date mentioned, and adopted and published by-laws for carrying out its unlawful designs, which by-laws provided as follows:

"Sec. 13. When any manufacturer or wholesale dealer, or his agent or agents. shall sell to any person not a dealer, excepting railroad companies, and at such points where there are no dealers, such sales

shall be reported to the secretary, and he shall notify the members of the association; whereupon it shall be the duty of all members of this association to discontinue their patronage with such manufacturer or wholesale dealer; provided, however, that if said manufacturer or wholesale dealer shall promise and furnish a guarantee to the secretary of this association that he will not again sell to any person not a dealer, notice shall be sent by the secretary to all members of the association, when said manufacturer or wholesale dealer shall again be considered in good repute.

"Sec. 14. No dealer belonging to this association shall ship to any point where any other member may be engaged in the retail trade, at less than the regular retail price at that point."

That, plaintiffs having incurred the displeasure of said trust, of which they were not members, because they had seen fit in the exercise of their rights as citizens to sell lumber to others than dealers, or for some other cause unknown to plaintiffs, defendants, pursuant to the by-laws quoted, did, it is alleged, on or about the 10th day of September, 1888, unlawfully and maliciously, and with intent to oppress and ruin petitioners and other mill men of Texas, not members of their unlawful trust, confederacy, and conspiracy, issue, promulgate, print, distribute, and mail and deliver to nearly every lumber dealer in Texas, and especially to those with whom petitioners had heretofore been dealing and selling lumber, a circular, in form as follows:

"OFFICE OF
"SECRETARY AND TREASURER
"LUMBER . DEALERS' ASSOCIATION
"OF TEXAS.
"P. O. Box 657.        "AUSTIN, TEXAS, September 10, 1888.

"DEAR SIR—We are informed that the following mill men are selling lumber to others than legitimate dealers, much to the detriment of the regular trade.   We therefore ask that you will not patronize them until such a time as they shall notify the secretary of our association that they will desist from selling to other than regular dealers:   Jossurand & Bro., Trinity; Olive & Sternenberg, Olive; J. Keley, Brantley; McLean, Selma; M. T. Jones Lumber Co., Houston; R. S. Tinnin & Co., Trinity.

"In connection with this notice, we urge every dealer in the State to observe the rules of our association, and refrain from buying from these men while they persist in selling to the consumers.

"Many towns in Texas now have their trade and prices in a demoralized condition on account of this great and growing evil.   The mill men who do this kind of business are pushing their trade not only into the larger towns, but are now seeking consumers in every cross-road and hamlet where they can find a farmer, merchant, or carpenter who

can consume as much as a mixed car load of lumber, and to these consumers they will sell as cheap as to the dealer.

"And while you may not as yet have suffered from this evil, your town and your trade may be the next to suffer, and unless the yard men of this State rise in their might and refuse to them their trade, it is a question of but a few years at furthest when the interior dealers will be a thing of the past, and their business will be absorbed by the mill men and jobbers.

　　　　　　　　　"Respectfully yours,

　　　　　　　　　　　　"A. VAN PATTEN, President;
　　　　　　　　　　　　"C. F. DRAKE, Secretary;
　　　　　　　　　　　　"ED. STEVES,
　　　　　　　　　　　　"JOHN G. WAPPLES,
　　　　　　　　　　　　"WM. B. BRAZELTON,
　　　　　　　　　　　　"J. C. HILLSMAN,
　　　　　　　　　　　　"G. W. OWENS,
　　　　　　　　　　　　"J. W. TEMBY,
　　　　　　　　　　　　"J. E. WHITESELLE,
　　　　　　　　　　　　"J. E. TUCKER,
　　　　　　　　　　　　"C. L. STADTLER,
　　　　　　　　　　　　"S. SMITH,
　　　　　　　　　　　　　　　"Board of Directors."

Which, when received by such lumber dealers to whom same were mailed and delivered, had the effect, because many of them were co-conspirators with defendants and belonging to said organized conspiracy, to cause all of such lumber dealers and sellers of lumber to refuse to make further purchases from your petitioners, thereby causing a complete cessation of their former prosperous trade and business from then until the present time, and causing your petitioners, to prevent their absolute ruin and failure of business, to resort to a trade with the consumer, direct and almost exclusively.

And your petitioners aver, that the effect of the malicious issuance of said circular and the distribution of same as aforesaid, coupled with said trust and conspiracy aforesaid, caused them damage in loss of sales of lumber from the date thereof to the present time, in the way of net profits arising on such sales, and affected their business, and retarded same, and the probable and material effect thereof will result in damages to them and their business in the future, which can not be overcome or prevented by petitioners, to the extent of $100,000, and in which sum petitioners have been damaged by defendants by the wrongful, willful, and malicious acts of defendants, in the manner and by the means aforesaid, persisted in and kept up from May 16, 1888, to the present time, by sundry acts and conduct of defendants, carrying out the general designs of their unlawful trust, confederacy, and con-

spiracy. And by reason of the premises, and by reason of the unlawful trust, confederacy, and conspiracy, and malicious conduct and acts of the defendants aforesaid, petitioners have been further damaged in the sum of $25,000, in addition to their aforesaid damages of $100,000, and which sum of $25,000 they claim as exemplary damages.

Premises considered, your petitioners sue, and pray that defendants be cited in terms of law to appear and answer this petition, and on a final hearing petitioners pray for judgment against defendants for the sum of $125,000, their actual and exemplary damages aforesaid, and for injunction restraining defendants in the further perpetration and continuation of their wrongful and unlawful acts, and for all costs of this suit, and for general and special relief, and as in duty bound will ever pray, etc.

Defendants filed general and special demurrers to the petition. The court below sustained the general demurrer; and plaintiffs declining to amend, the cause was dismissed. Plaintiffs appealed, assigning the ruling as error.

*Opinion.*—Under the authority of Delz v. Winfree, Norman & Pearson (80 Texas, 400), it must be held that the petition set up a good cause of action.

In that case, Justice Henry, speaking for the court, says: "A conspiracy (at common law) can not be made the subject of a civil action, although damages result, unless something is done which, without the conspiracy, would give the right of action. In other words, an act which, if done by one alone, constitutes no ground of action, can not be made the ground of such action by alleging it to have been done by and through a conspiracy of several; the true test as to whether such action will lie, is whether or not the act accomplished after the conspiracy has been formed is itself actionable."

The petition in that case charged, that defendants had conspired and agreed not to sell to plaintiff any live animals or slaughtered meat for the purpose of prosecuting his business as a butcher, and induced others not to sell him any such animals or meat, thus compelling him to close up one of his shops, to his injury, etc. The acts were alleged to have been maliciously and wantonly done.

It was decided that, while a person has the right to refuse to have business relations with another, whether the refusal is based upon reason, whim, prejudice, or malice, "the privilege is limited to the individual action of the party who asserts the right. It is not equally true that one person may from such motives influence another person to do the same thing. If without such motive the cause of one person's influence with the property or privileges of another is to serve some legitimate right or interest of his own, he may do acts himself,

or cause others to do them, that injuriously affect a third party, so long as no definite legal right of such third party is violated."

In concluding the case, the court said: "Plaintiff's petition goes further than to charge that each of the defendants refused to sell to him. It charges that they not only did that, but that they induced a third person to refuse to sell to him. It does not appear from the petition that their interference with the business of plaintiff was done to serve some legitimate purpose of their own, but that it was done wantonly and maliciously, and that it caused, as they intended it should, pecuniary loss to him."

It was held that the demurrer should have been overruled.

Following the above case, and applying the principles laid down by it, we must hold in the case before us, that the petition set up a good cause of action in charging that defendants had maliciously influenced others not to deal with plaintiffs, to their injury.

It can not be held that defendants had the right to prevent plaintiffs from selling to consumers, or that such interference by them (defendants) was serving a legitimate purpose connected with their own business. To break plaintiffs down as competitors for the consumers' trade might, it is true, result in benefit to defendants, but such a benefit obtained in such manner could not be deemed a legitimate purpose, within the meaning of the opinion quoted. Coal Co. v. Barclay Coal Co., 68 Pa. St., 173.

Plaintiffs had the right to sell at wholesale or retail, or both, to the retail dealer and to the actual consumer, and defendants had the same right, as well as the right to solicit and secure trade from plaintiffs' customers by underselling them. This would be legitimate. They could do this, and would not be responsible for the injurious consequences to plaintiffs' business; but they could not, without some legal purpose directly serving their own business, maliciously induce third persons not to trade with plaintiffs, and so injure them.

Plaintiffs can not recover for any injury except such as results from the wanton and unlawful interference with plaintiffs' business in influencing third persons not to trade with them, and only for the injury that has occurred.

We rest our conclusions wholly upon the case of Delz v. Winfree, and hold that the general demurrer to the petition should not have been sustained.

The judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 7, 1894.