**GRIFFIN v. PALATINE INS. CO. et al.** *
(No. 187–3232.)

(Commission of Appeals of Texas, Section B.
March 8, 1922.)

Monopolies ⊱18 — Agreement of insurance companies not to write insurance for persons held illegal.

Under Rev. St. arts. 7796–7809, and Pen. Code 1911, arts. 1454–1479, subds. 1, 3, 5, prohibiting combinations to create restrictions in trade or commerce, and making such acts illegal, the refusal of insurance companies to write insurance for an individual is illegal.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

On rehearing. Former opinion 235 S. W. 202 set aside. Judgment of Court of Civil Appeals affirmed, and cause remanded to the district court for new trial.

See, also, 202 S. W. 1014.

W. H. Kimbrough, of Amarillo, for plaintiff in error.

Andrews, Streetman, Burns & Logue, of Houston, and Thompson, Knight, Baker & Harris, of Dallas, for defendants in error.

McCLENDON, P. J. The Court of Civil Appeals, after a general statement of the case, concluded that a combination or agreement not to have business dealings with another was not an unlawful or actionable conspiracy unless others not party to the agreement were actively induced not to deal with such person, or false statements were circulated concerning him in furtherance of such combination. The court then held that the evidence was insufficient to warrant a finding of conspiracy. Our construction of that finding was that it related, not to an agreement not to insure plaintiff but to an actionable conspiracy as defined by that court, and therefore that there was no finding by that court inconsistent with the judgment of the trial court upon our holding upon the law of the case. A more mature study of the opinion of the Court of Civil Appeals has led us to conclude that that opinion must be construed as a finding of fact against the existence of any agreement among defendants not to insure plaintiff. Regardless of our holding upon the law of the case, it is the province of the Court of Civil Appeals to pass finally upon the facts, and, in view of this construction of the findings of that court, it follows that under the previous holdings of the Supreme Court the case must be remanded to the trial court for a new trial.

Under the holding in our former opinion that the judgment of the trial court should be affirmed, it was unnecessary to pass upon certain questions therein specified.

Since, however, the case is to be remanded, we think those questions become material as a guide to the trial court.

The holding of the Court of Civil Appeals that there was no evidence to go to the jury upon the issues of whether defendants had actively induced or persuaded other insurance companies not to deal with plaintiff or had circulated false reports concerning him is, in our opinion, erroneous. The evidence in this regard is in large measure circumstantial, as is usually true in cases of this character. It would not be proper for us to discuss the evidence in detail. It is sufficient to say that in our opinion there is ample support in the evidence upon both of those issues, as well as upon the issue of agreement among defendants not to insure plaintiff.

[1] The other question which we think becomes material in view of a new trial, is whether an agreement between two or more insurance companies not to insure plaintiff comes within the inhibitions of our anti-trust law. The original anti-trust act passed in 1889 (Acts 1889, c. 117) did not mention insurance or aids to commerce, and in Queen, Insurance Co. v. State, 86 Tex. 250, 24 S. W. 397, 22 L. R. A. 483, it was held that that act did not relate to the business of insurance. The combination sought to be held illegal in that case was an agreement among insurance companies fixing rates. It was also held that such agreement was not criminal under the common law. In reaching these conclusions the Supreme Court held that, while insurance was a very material aid to commerce, it was not the business of "commerce" as that term is commonly understood. It was further held that, if the first subdivision of the first section of that act, which prohibits combinations "to create or carry out restrictions in trade," should be construed as broad enough in its language to include insurance, that provision was inoperative as not sufficiently definite to support a prosecution under the criminal law. That decision was rendered in December, 1893. At the regular session of the Legislature in 1895 (Acts 24th Leg. c. 83) the act was amended so as to include aids to commerce. Insurance was not specifically mentioned in that act. In 1902, in the case of State v. Shippers' Compress Co., 95 Tex. 603, 69 S. W. 58, the Supreme Court, following the Supreme Court of the United States in Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, held that the 1895 act was, except in certain limited respects, violative of the Fourteenth Amendment to the Constitution of the United States, because it exempted from its operation agricultural products, etc., in the hands of the producers.

The act of 1903 (Acts 1903, c. 94), which is now chapter 1 of title 130 of the Revised

Civil Statutes, and chapter 6 of title 18 of the Penal Code, recites in its emergency clause the fact that the 1895 act had been held unconstitutional. There are a number of material differences between the 1895 and 1903 acts. The former has but one section (section 1) which defines illegal combinations. This section is divided into five subdivisions. The act of 1903 has three sections which deal with illegal combinations. These are section 1, article 7796), which defines trusts and corresponds to section 1 of the 1895 act, and which has seven subdivisions; section 2 (article 7797), which defines monopoly; and section 3 (article 7798), which defines conspiracies against trade.

The holding of the Court of Civil Appeals that the acts complained of in this case are not prohibited by the 1903 act are based upon the conclusion that article 7796 deals with those combinations in which the public are interested, and article 7798 alone deals with those combinations which affect the individual, and not the public, and that, since that article does not mention insurance or aids to commerce, and since article 7796 does not specifically prohibit agreements among insurance companies not to insure, and since the public are not interested in a combination of this sort which affects only the individual, the acts here complained of are not within the inhibitions of that act. For convenience we copy the first section of the acts of 1895 and 1903, omitting subdivisions 5 and 6 of the latter act. The words in ordinary type appear in both acts; those in parentheses appear only in the 1895 act; and those underscored appear only in the 1903 act:

"That a 'trust' is a combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons, or either two or more of them, for either, any or all of the following purposes:

"1. To create, *or which may tend to create,* or carry out restrictions in trade or commerce or aids to commerce *or in the preparation of any product for market or transportation,* or to create or carry out restrictions in the (full and) free pursuit of any business authorized or permitted by the laws of this State.

"2. To *fix, maintain,* increase or reduce the price of merchandise, produce or commodities, *or the cost of insurance, or of the preparation of any product for market or transportation.*

"3. To prevent *or lessen* competition in *the* manufacture, making, transportation, sale or purchase of merchandise, produce or commodities, *or the business of insurance,* or to prevent *or lessen* competition in aids to commerce, *or in the preparation of any product for market or transportation.*

"4. To fix *or maintain* (at) any standard or figure (,) whereby *the* (its) price (to the public) *of any article or commodity of merchandise, produce or commerce, or the cost of transportation, or insurance, or the preparation of any product for market or transportation,* shall be in any manner *affected,* controlled or established, (any article or commodity of merchandise,

produce or commerce intended for sale, use or consumption in this state)."

"5. To make (or) enter into, *maintain* (or) execute or carry out any contract, obligation, or agreement (of any kind or description) by which (they) *the parties thereto* (shall) bind, or have bound themselves not to sell, dispose of, (or) transport *or to prepare for market or transportation* any article or commodity (or article of trade, use, merchandise, commerce or consumption) *or to make any contract of insurance at a price* below a common standard or figure, or by which they shall agree in any manner to keep the price of such article (,) or commodity or *charge for* transportation *or insurance, or the cost of the preparation of any product for market or transportation,* at a fixed or graded figure, or by which they shall in any manner *affect or maintain* (establish or settle) the price of any *commodity or* article (or commodity) or *the cost of* transportation *or insurance, or the cost of the preparation of any product for market or transportation* between them or themselves and others, to preclude a free and unrestricted competition among themselves or others in the sale or transportation of any such article or commodity, *or business of transportation or insurance, or the preparation of any product for market or transportation,* or by which they shall agree to pool, combine or unite any interest they may have in connection with the sale or *purchase of any article or commodity, or charge for* transportation *or insurance or charge for the preparation* of any (such article or commodity that) *product for market or transportation, whereby* its price *or such charge* might be in any manner (be) affected."

If we concede that article 7798 does not embrace insurance, still we think there can be no serious question but that an agreement or combination among insurance companies not to write insurance for any individual or class of individuals does come both within the letter and the spirit of article 7796. It was clearly the purpose of the Legislature in passing the 1895 act to bring the business of insurance, in so far as it affects trade and commerce, as much within the provisions of the anti-trust law as any other business or trade. There is nothing in that act which limits its effect to any particular character of combination such as rate making as applied to aids to commerce, and there can be no question, we think, that the language in section 3 of that act, which prohibits combinations "to prevent competition in aids to commerce," was intended to embrace the business of insurance in so far as it affects commerce. Any other construction of that act would render it entirely ineffective as to insurance or other aids to commerce. That act was passed at the next session of the Legislature after the Queen Insurance Co. Case was decided. Its emergency clause recites that the people of Texas are without an adequate remedy against trusts, and the Legislature must necessarily have had in mind the Queen Insurance Co. Case, and

must have intended to place insurance within the purview of the anti-trust act.

If we take the view that subdivision 1 of the 1903 act should be given the same construction with reference to the generality of the language used that was given in the Queen Insurance Co. Case to the first subdivision of the act of 1889, still we think that a combination of insurance companies not to write a particular individual or set of individuals clearly comes with the inhibitions of subdivisions 3 and 5 of the 1903 act. Subdivision 3, stripped of impertinent matter, prohibits combinations "to prevent or lessen competition in * * * the business of insurance, or to prevent or lessen competition in aids to commerce." Subdivision 5 prevents combinations "to preclude a free and unrestricted competition among themselves or others in the * * * business * * * of insurance." The statute nowhere says that article 7796 inhibits only such combinations as affect the public generally. Subdivision 4 of the 1895 act used the language "price to the public," but that language was eliminated in the 1903 act. That act defines what a trust is, and article 7799 prohibits and declares illegal all trusts. But, even conceding that the combinations which are declared to be trusts under article 7796 do fall within the class in which the public generally are interested, it cannot be said that a combination among insurance companies not to write an individual or set of individuals is a matter in which the public have no concern. Under modern business methods commerce and trade would be very materially hampered and restricted but for the business of insurance. Credits are largely extended in view of the security afforded by it, and the hazards of business enterprises without its protection would be too great to warrant engaging therein by large classes of capital, especially the smaller capital of private individuals who could not afford to carry their own risks. If two or more insurance companies may lawfully combine to prevent competition among themselves in insuring a particular individual, then they may make such combination with reference to a number of individuals or class of individuals. If the 1903 act does not cover the case of Griffin, a grocery merchant in Amarillo, who refused to abide by the judgment of an insurance adjuster as to the amount of his loss, but threatened to take the matter into the courts, then it would be perfectly lawful for any number of or all insurance companies doing business in Texas to prescribe a rule by which any individual in any business who should refuse to accept the judgment of their adjusters as to amount of loss should be blacklisted by them. Subdivision 5 of article 7796 specifically prohibits agreements which preclude a free and unrestricted competition among the parties to such agreement in the business of insurance. There can be no question but that an agreement between defendants not to write Griffin precluded any competition between themselves in regard to Griffin's business as an applicant for insurance. The purpose of this agreement, if plaintiff's theory of the case is correct, was to put Griffin out of business by making it impossible for him to get insurance. The jury found that the combination was effective as injuring Griffin's business to the extent of $7,500 actual damages. If the 1903 act is to be construed away in so far as Griffin or any other particular individual is concerned, then it would be competent for the insurance companies to force adjustments of losses in accordance with their own views or desires as outlined above. We are unable to give the statute this construction. We think clearly that the combination, if the jury upon another trial should find that it existed, was in violation both of the spirit and letter of the anti-trust act of 1903.

We therefore conclude that the former judgment of the Supreme Court (235 S. W. 202) adopting our recommendation that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed, should be set aside, that judgment should be entered affirming the judgment of the Court of Civil Appeals, and that the cause be remanded to the district court for a new trial in accordance with the views expressed in our original opinion and in this opinion.

CURETON, C. J. Judgment of November 30, 1921, set aside. Judgment of the Court of Civil Appeals affirmed, and cause remanded to the district court for new trial.

---

⬤⟸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes