**Phil C. HUFFMAN et al., Appellants,**

**v.**

**Lyter HUFFMAN et al., Appellees.**

**No. 16033.**

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 18, 1959.

Rehearing Denied Nov. 27, 1959.

Collins & Green, and Cantey, Hanger, Johnson, Scarborough & Gooch, and Charles L. Stephens, Fort Worth, for appellants.

Stone, Agerton, Parker & Snakard, R. T. Thornton, Hyder & Honts, and John B. Honts, Fort Worth, and on rehearing also Tilley, Hyder & Law, Fort Worth, for appellees.

BOYD, Justice.

Appellants Phil C. Huffman, Mary Lou Huffman Spireling, joined by her husband, Brownie Spireling, Tom Hull, Jr., William Hull, and William H. Howery, trustee for Mary Lou Huffman Spireling, sued appellees Lyter Huffman, Myrtle Huffman, Patricia Wright and her husband, Arthur Wright, and the Fort Worth National Bank, a corporation, administrator with will annexed of the estate of Gladys Huffman, deceased, seeking a construction of, and a declaration of the rights of the parties under, a holographic instrument which had been admitted to probate as the last will and testament of Gladys Huffman.

Gladys Huffman died on January 6, 1958. Her parents predeceased her. At the time of her death she was a single woman, and had never given birth to or adopted a child. She was survived by two brothers, Phil C. Huffman and Lyter Huffman; two sisters, Mary Lou Huffman Spireling and Myrtle Huffman, a niece, Patricia Wright, the daughter of Mary Lou Huffman Spireling; and Tom Hull, Jr., and William Hull, sons of Gladys Huffman's deceased sister, Lizzie Belle.

The will is as follows:

"To Whom it May Concern:

"To Myrtle, Lyter and Pat I leave the choice of my personal belongings (my ring is at Ft. Worth Nat'l Bank.) Then they can give some things to the others.

"The Rotary Apts. Inc. stock belonging to me has been handed to Myrtle and Lyter for what I lost them in the oil deal.

"305 Lamar Building and contents to be divided among all four—2 brothers and two sisters and a fifth share to Lizzie Belle's two children.

"Please give part of Rotary Apts. Income to Pat

"I love all of you.
        "(s) Gladys Huffman
"Rochester, Minn.
"Sept. 3, 1957"

Rotary Apartments, Inc., is a private corporation with its stock divided in 1,600 shares, all shares except one having been owned by testatrix at the time of her death, unless she had effected a gift of them inter vivos. Her name did not appear on the certificates, all of them having been endorsed in blank.

Appellees Lyter and Myrtle Huffman pleaded that they took the Rotary Apartments, Inc., stock by virtue of the second paragraph of the will; and, alternatively, that they took it by gift inter vivos. The trial court found against appellees on their contention that such stock was transferred to them by gift inter vivos, and that holding is not under attack. Appellants contend that the second paragraph of the will does not dispose of any property, but amounts merely to a statement by the testatrix of her opinion that she had, prior to the making of her will, effected a gift inter vivos of such stock to Myrtle and Lyter. The court found that "from a construction of the will and from evidence heard pertaining thereto, Gladys Huffman intended to and did, by Paragraph Two of the will, devise the Rotary Apartments, Inc., corporate stock belonging to her to Myrtle Huffman and Lyter Huffman."

All wills, except nuncupative, must be in writing. A written will is generally defined as an instrument by which a person makes a disposition of his property, to take effect after his death, and which, in its own nature, is ambulatory and revocable during his lifetime. Maxey v. Queen, Tex.Civ.App., 206 S.W.2d 114; Williams v. Noland, 10 Tex.Civ.App. 629, 32 S.W. 328, error refused.

While appellees contend that the corporate stock passed by the terms of the second paragraph of the will, and appellants contend that such paragraph makes no bequest of property, the intention of the testatrix is to be discovered by considering the entire instrument from its four corners, the intention being collected from the whole instrument. Jackson v. Evans, Tex.Civ. App., 305 S.W.2d 236; Lightfoot v. Poindexter, Tex.Civ.App., 199 S.W. 1152; Foote v. Foote, Tex.Civ.App., 76 S.W.2d 194. The intention must be ascertained from the meaning of the words in the will and from those words alone, but in order to discover the meaning attached by the testatrix to the words used and to apply them to the particular facts in the case, the law admits extrinsic evidence as to the situation in which she was placed, the state of her family, her property, and other circumstances relating to herself individually and to her affairs. Federal Land Bank of Houston v. Little, 130 Tex. 173, 107 S.W.2d 374.

Extrinsic evidence was admitted, the material parts of which related to the question of whether the testatrix had effected a gift inter vivos of the corporate stock, and none of which we think militates against the view that the second paragraph of the will is a mere recitation and not a bequest of property. The evidence disclosed that through the years Myrtle and Lyter had advanced "goodly sums of money" to testatrix to invest in "oil deals," from which they got no returns; on July 27, 1957, before the will was written on September 3, 1957, testatrix handed the certificates of stock in Rotary Apartments, Inc., to Myrtle; according to

different witnesses she said, at the time she handed over the certificates, "Take this and keep it"; "I am giving them to you, and holding you responsible for them"; "Put them away, and you be responsible for them"; "You take this and be responsible for it, take care of it. I am giving it to you to take care of"; "I am giving it to you"; "I am giving you the stock to take care of and be responsible for it, know where they are when you need them." Myrtle testified: "Q. Did you accept the Rotary Apartment stock from Gladys Huffman as a gift for you and Lyter if she intended it to be a gift? A. Yes." At another point she was asked, "Q. Miss Huffman, did Gladys tell you that the Rotary Apartments were yours and Lyter's?" to which she answered, "Yes."

It is our view that the extrinsic evidence and the language of the will fail reasonably and fairly to disclose an intention that the stock should pass under the will.

Courts will go far to give effect to written testamentary instruments when they come within the statutes relating to wills, but courts have no authority to dispose of property for persons when they have not done so. To be testamentary, the language used must by fair construction be susceptible to a meaning to pass title to property. The intent of the testator must be ascertained alone from the meaning of the words used by him in the purported will. The intent must be drawn from the purported will, not the will from the intent. Kennard v. Kennard, Tex.Civ.App., 84 S.W.2d 315. In construing the paragraph in question, it is our duty to determine what the testatrix meant by what she actually said in her will, and not by what we think she may have intended to say but did not say. Smoot v. Harbur, Mo.App., 203 S.W.2d 890.

The right and power to dispose of property by will is purely statutory. The statute requiring wills to be in writing precludes ascribing to the testator any intention which he did not express. Adams v. Maris, Tex.Com.App., 213 S.W. 622. Courts

may not give effect to mere conjecture as to the intention of the testator, since to do so would be assuming power to make his will. Barmore v. Darragh, Tex.Civ.App., 231 S.W. 472. "It is a maxim that a testator can disinherit his heirs or next of kin only by leaving his property to others." Coffman v. Coffman, 85 Va. 459, 8 S.E. 672, 2 L.R.A. 848, 17 Am.St.Rep. 69. An heir at law is entitled to every interest in property not disposed of by the testator. It is not enough that the testator did not intend the heir to take; he must make a disposition in favor of another; otherwise the heir will take even against his intention, however plainly manifested. The reason is that the law provides how a man's estate shall go at his death unless he by his will plainly directs that it shall go differently.

■ There is not a word of a dispositive nature in the second paragraph, and, so far as the Rotary Apartments stock is concerned, there is not one in the entire instrument. We do not think that either that paragraph or any other part of the will bequeaths that property to anybody.

■ A recital in a will that a gift has been made by that instrument which in fact had not been made by any other part of the instrument, implies a gift or bequest according to the recital. But a recital that by another instrument a person has rights, or will receive them in some other way, cannot be turned into a gift or bequest by implication. Ann.Cas.1917D, note, page 433; Rood on Wills, 1926 Ed. sec. 497a. "The mere recital by the will that the testator had heretofore conveyed the lot in question to the plaintiff shows no such intention on the part of the testator to devise the lot by his will, but simply recites a fact, probably at the time believed by him to be true, to wit, that he had conveyed the property to the plaintiff by deed, which, in truth, had never been done." Reynolds v. Reynolds, 195 A. 721, 722, 16 N.J.Misc. 1. "Declarations which show that testator believes that specified persons own certain interests is not a gift to such persons, of such interests, by implica-

tion." 2 Page on Wills (Lifetime Ed.), p. 866, sec. 930. Where a testator showed by recitals in his will that he had erroneously supposed a title to subsist in a third person to property which in fact belonged to himself, as where he referred to certain property as being settled on his wife, which was not in fact so settled, it was held that there was no bequest thereby to the wife by implication. Wright v. Wyvell, 2 Vent. 56, 86 Eng.Reprint 306, as cited in Annotations, 110 A.L.R., p. 267.

In Zimmerman v. Hafer, 81 Md. 347, 32 A. 316, the court considered a will containing the following provisions: " 'Whereas, I have this day made and executed a deed conveying to J. Monroe Zimmerman the farm whereon I now reside, I do hereby give and bequeath unto him, the said James Monroe Zimmerman, all my personal property of whatever description, and wheresoever situate. I thus give to the said J. Monroe Zimmerman all my property and estate because he is marreid to my niece, and I have been living with them for many years, and have a high regard and affection for them, and desire that they shall enjoy the same to the exclusion of my other relatives.' " The deed was canceled on the ground that it was procured by undue influence. Zimmerman then sought to establish title to the land under the terms of the will. In rejecting his contention, the court said:

" * * * Just as he has written his will, it must stand. What he meant to say must be gathered from what he did say therein as viewed from the standpoint that he then occupied; and what he did say in the will itself, and not what he previously declared, no matter how unequivocal its import may be, must solve the question before us. In construing a will, effect is undoubtedly to be given to the intention of the testator if that can be done without violating any legal principle. But to what intention must effect be given? That manifested in some other paper not made a part of the will, or that disclosed on the face of the will? If to the latter, as is incontestably

the case, then there must be apparent on the will itself an intention to do something by the will; and, if the will does not undertake or purport to do a particular thing,—to make a particular devise,—then, no matter how plainly it may appear by some other paper that it was designed title should pass to certain property, the will cannot be held to pass that title in the absence of apt words to carry it, or in the absence of a clear intent that title should pass, not by the other paper, but by the will. * * * "

The judgment decreeing that paragraph two of the will bequeathed to Myrtle and Lyter Huffman 1599 shares of the Rotary Apartments, Inc., corporate stock is reversed, and judgment rendered that Gladys Huffman died intestate as to that stock.