Sara Helen BATES and Fay Ellen Gleaton, Appellants,

v.

Thomas Michael FULLER and Carolyn Fuller, Individually and as Co-Independent Executors of the Estate of Pearla S. Coffman, Deceased, Appellees.

No. 12–81–0213–CV.

Court of Appeals of Texas, Tyler.

Nov. 23, 1983.

Douglas R. Hudman, Fort Worth, for appellants.

Jesse M. DeWare, IV, Jefferson, for appellees.

## ON MOTION FOR REHEARING

COLLEY, Justice.

Our original opinion delivered July 14, 1983, is withdrawn, and the following opinion is substituted therefor.

Plaintiffs/appellants Sara Helen Bates and Fay Ellen Gleaton brought this action against defendants/appellees Thomas Michael Fuller and Carolyn Fuller individually, and in their capacities as Co-Independent Executors of the estate of Pearla S. Coffman, deceased, seeking construction of the will of the decedent, as well as actual and exemplary damages against appellees based on an alleged civil conspiracy between appellees to bring about an ademption of a bequest of certain real estate made in such will to appellants.

Appellants and appellee Carolyn Fuller are daughters of Pearla S. Coffman, and

appellee Thomas Michael Fuller is the son of appellee Carolyn Fuller.

The case was tried to a jury on the conspiracy and exemplary damage issues. In response to four issues submitted, the jury found (1) the Coffman home was listed for sale for the sole reason of removing the property from the estate of Pearla Coffman; (2) that before the execution by Pearla Coffman of the first power of attorney to appellee Thomas Michael Fuller, both appellees "knew that the principal asset of the Pearla Coffman estate in which Sara Helen Bates and Fay Ellen Gleaton were to share was the real property, if any, owned by Pearla Coffman at the time of her death, according to the terms of an existing will of Pearla Coffman"; (3) that appellees "conspired with each other to procure a sale of the Pearla Coffman home prior to her death"; and (4) that appellees "in conspiring to sell the Pearla Coffman real estate, if any, ... were motivated by malice towards Sara Helen Bates and Fay Ellen Gleaton." In response to Special Issues 5 and 6, the jury awarded each appellant $5,000 against appellee Thomas Fuller and $15,000 against appellee Carolyn Fuller. The jury verdict was returned and filed on May 29, 1980. On November 2, 1981, the trial court granted appellees' motion for judgment notwithstanding the jury's verdict and rendered a take-nothing judgment against appellants on their action for damages resulting from the alleged civil conspiracy, and further rendered judgment that the bequest to appellants in their mother's will of two-thirds of the proceeds from certain real estate (the Pearla Coffman home in Lewisville, Texas) was adeemed by the sale of such property during the lifetime of Pearla Coffman.

Appellants contend that the trial court erred (1) in entering the judgment notwithstanding the jury's verdict; (2) in failing to impose a constructive trust on the proceeds from the sale of the home; (3) in failing to grant them judgment for actual and exemplary damages; and (4) in entering judgment that the bequest was adeemed. We reverse that part of the judgment holding that the bequest was adeemed and render judgment that each appellant have and recover over and against appellees, individually and in their capacities as Co-Independent Executors of the estate of Pearla S. Coffman, deceased, the sum of $10,421.62; otherwise, we affirm the judgment.

## THE ADEMPTION ISSUE

Pearla Coffman executed her will on September 30, 1975, appointing appellees as Co-Independent Executors. Under Paragraph 1.4 of Item I of the will, the testatrix directed that:

> All my legally enforceable debts, funeral expenses, costs and expense of the administration of my estate, and federal estate taxes becoming payable because of my death, if any, be paid out of my estate in accordance with the direction for payment of same as provided in Item II of this will.

The pertinent provisions of Item II Paragraph 2.2(a)(1) of the will referred to in the foregoing Paragraph 1.4 reads:

> (1) *Real Estate.* On the day of my death, if I own any real estate, such real estate shall be sold by my Executor to pay all of my legally enforceable debts, funeral expenses, all costs of my last illness, costs and expenses of the administration of my estate, and Federal Estate Taxes, if any. After such debts, expenses and taxes have been paid, the balance of the proceeds remaining from the sale of my real estate, shall be divided equally among my three children, CAROLYN C. FULLER, presently of Wood County, Texas, FAYE ELLEN GLEATON, presently of Tarrant County, Texas, and SARA HELEN BATES, presently of Tarrant County, Texas. On the date of my death, if I then own no real estate, the debts, expenses and taxes mentioned above shall be paid out of the Residue of my estate, as below described.

Following the bequest above quoted, testatrix makes several other special bequests to various persons and then bequeaths the remainder of her estate to appellee Carolyn Fuller.

In addressing the ademption issue presented, we hold that the bequest at issue was a specific or special bequest rather than a demonstrative or general one. *Lake v. Copeland,* 82 Tex. 464, 17 S.W. 786 (1891). Therefore, the bequest is subject to the operation of the general ademption rule embodied in the common law of this state. *Shriner's Hospital for Crippled Children of Texas v. Stahl,* 610 S.W.2d 147 (Tex.1980). Under the general or orthodox ademption rule, the question is, whether the subject matter of a special bequest or devise is a part of the testator's estate at the time of his death. Atkinson, *Wills* 2nd Edition (1953) § 134, p. 742, Footnote 5. If it is not, the bequest is adeemed unless a contrary intention is expressed in the will. *Shriner's Hospital for Crippled Children of Texas v. Stahl, supra,* at 150. In *Shriner's Hospital,* the court applied the orthodox rule to a bequest of realty sold by the testatrix during her lifetime. In our case, the testatrix clearly made a bequest under the above-quoted provisions of her will of the proceeds from the sale of "my real estate" to her three daughters after the payment therefrom of certain debts and expenses as above noted. Mrs. Coffman's overall purpose and intent was clear. She provided that the cash proceeds from the sale of her real estate were to be used to pay the debts, expenses and taxes mentioned, and "after such debts, expenses and taxes have been paid, *the balance of the proceeds remaining from the sale of my real estate shall be divided equally among my three children ...."* (Emphasis added.) In construing such language in light of the language used by the testatrix in Paragraph 1.4 of Item I and the first and last sentences of Paragraph 2.2(a)(1) above quoted, we conclude that the testatrix intended to make a bequest of the cash proceeds from the sale of her real estate remaining in her estate after the payment of the debts, expenses and taxes defined in Paragraph 1.4 of Item I of her will. We have reached this conclusion as to the testatrix's intent from a careful examination of the language of the will contained within its four corners. *Welch v. Straach,* 531 S.W.2d 319, 322 (Tex.1975). The record shows that the Coffman home was sold on August 5, 1977, and it is undisputed that the net proceeds from the sale in the sum of $31,264.86 were deposited in a separate savings account in the First State Bank in Hawkins and were on hand in such account at the time of Mrs. Coffman's death on October 9, 1977.

Our research reveals that few cases dealing with the ademption rule have been decided by the Texas appellate courts and that there is no published Texas case involving a bequest of proceeds of specific property, with the exception of *Dorsett v. Stucke,* 291 S.W. 570 (Tex.Civ.App.—San Antonio 1927, writ ref'd). *Dorsett* deals with a stated cash legacy payable out of certain real and personal properties. The testatrix in that case made a bequest to her son in a codicil to her will reading: "I ... bequeath unto ... my son Fred ... the sum of ... $30 per month from January 12, 1904, the date of his majority, until the probating of this will...." The codicil fully provided, "It is further my will and desire that this amount be paid from and out of the properties and assets of my ... grocery business." The testatrix operated a grocery store in a building and on certain lands owned by her. A few months before her death the testatrix sold the business but not the real property. After her death a court appointed receiver sold the lands and building. Certain legatees in the will filed a will construction suit, claiming Fred's cash bequest "failed" because the grocery business had been sold by the testatrix. The San Antonio Court of Civil Appeals, without any reference to the ademption rule, stated that the question presented was, "[W]as it the intention of [the testatrix] to make an absolute bequest to her son...." or "[W]ill the fact that the grocery business was discontinued by the testatrix a few months prior to her death ... have the effect of defeating the bequest?" The court reasoned in part that while the business was sold and the proceeds therefrom merged into the "general estate" (therefore presumably not

identifiable as such), the lands and building were preserved intact at the time of the death of the testatrix, and that the sale of the business "did not have the effect of defeating the bequest."

Obviously, though perhaps unknowingly, the Dorsett court was pondering the general ademption rule and its application to a cash legacy payable out of the proceeds of certain specific properties. The bequest in *Dorsett* was in an amount fixed by the will and payable out of the proceeds of specific properties rather than a bequest of the proceeds from the sale of specific properties; otherwise it seems analogous to the facts before us here. *Dorsett* has not been cited in any reported decision of either the Courts of Appeal or the Texas Supreme Court; however, the opinion received good marks from the Supreme Court (writ refused) and has not been overruled or modified. Thus, even though the court did not identify the rule of ademption in its discussion of the case, it most assuredly did discuss the substance of the rule and held that its requirements were satisfied.

■ We are confronted here with the narrow question of whether a bequest of the proceeds from the sale of specific property is adeemed by the sale of the source property by the testatrix during her lifetime. We hold it is not adeemed by such sale since the proceeds thereof were an identifiable part of the estate at the date of death. Where, as here, the property which is the subject of the bequest is present at death, the rule is satisfied. In other words, the operation of the orthodox rule would result in an ademption here if the proceeds were not traceable at the time of the death of Pearla S. Coffman. Since they were, there was no ademption. See *Dorsett v. Stucke, supra; Nooe v. Vannoy,* (1861) 59 N.C. (6 Jones Eq.) 185; *Newbury v. McCammant,* 182 N.W.2d 147, 45 A.L.R.3d 1 (Iowa Sup.Ct.1970); *See Re Cunningham's Estate,* (1904 P.A.) 51, Pitts'b Leg.J. 363. An interesting discussion of the question presented here is contained in an annotation authored by Douglas Hale Gross, *Ademption of Bequest of Proceeds of Prop-*

*erty,* 45 A.L.R.3d 10 (1972); *See* Paulus, *Ademption by Extinction: Smiting Lord Thurlow's Ghost,* 2 Tex.Tech.L.Rev. 195 (1971), for a general discussion of the ademption rule.

## THE CIVIL CONSPIRACY

On May 23, 1977, Pearla S. Coffman executed a general power of attorney to appellee Thomas M. Fuller, and on the 13th day of June, 1977, she executed another general power of attorney to Fuller. The last document specifically authorized Fuller, as agent and attorney-in-fact, to sell and convey the Coffman home in Lewisville and provided for monthly payments from Coffman to Fuller and appellee Carolyn Fuller; otherwise, the latter document was identical with the first. Acting pursuant to such agency contracts, appellee Thomas Fuller sold the home in Lewisville on August 5, 1977, some sixty-five days prior to the death of Pearla S. Coffman.

The jury found that the appellees "motivated by malice" toward appellants "conspired," acting with knowledge of the will and its contents, "to procure a sale of the . . . home" before Pearla Coffman's death. Appellants contend that these findings are supported by the evidence, and hence the trial court erred in granting appellees' motion for judgment notwithstanding the verdict and in refusing to enter judgment for appellants for the exemplary damages awarded by the jury. Appellants also argue that the trial court erred in failing to render judgment for the actual damages sustained by appellants brought about by the actions of appellees in causing Mrs. Coffman to sell her home through the agency contracts before her death, thus adeeming the bequest of the cash proceeds therefrom.

■ Appellants allege that the appellees unlawfully conspired together to acquire two powers of attorneys from Pearla S. Coffman and did "misuse" such powers and breached a fiduciary duty owed to Pearla Coffman for the purpose of defrauding appellants by knowingly causing an ademp-

tion of the bequest made to appellants in the will of Pearla S. Coffman. Appellants further allege that the appellees, acting with full knowledge of the contents of such will, and under circumstances amounting to "fraud and trickery" obtained the powers of attorney and acting thereunder sold the home place of Pearla S. Coffman with intent to injure appellants by "depriving" them "of their rights under the will." Appellants allege that appellees "used their positions of trust and confidence and specially [sic] as a fiduciary to Pearla S. Coffman to unjustifiably enrich themselves" by bringing about an ademption of the bequest to appellants. Appellants allege further that they sustained actual damages in the amount of two-thirds of the proceeds from the sale of the home property which was a part of the bequest to them. Appellants also allege that the appellees acted "willfully and with malice" and prayed for punitive damages and for imposition of a constructive trust covering the proceeds of the sale of the home. From our review of the record, the evidence introduced by appellants was sufficient to raise the fact issues submitted in Special Issues 1, 2, 3 and 4, and if these issues were material and would support a judgment in favor of appellants, for either actual or exemplary damages, we would reverse the judgment below and remand the cause for a new trial. Such findings, however, are not material and will not support a judgment for the appellants. No actionable conspiracy is established by such findings. This is so because there is no finding and no evidence in this record that the appellees breached any fiduciary duty owed to Pearla Coffman or in any way induced her by undue influence, force, threats or by any fraudulent misrepresentations respecting the appellants to execute and deliver the powers of attorneys to Thomas Fuller, under which the property was sold. A civil conspiracy to be actionable "must be one unlawful in itself or one accomplished by unlawful means." *International Banker's Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 581 (Tex.1963).

■ Pearla Coffman had an absolute right to sell the home. Her will spoke only from the date of her death. *Hagood v. Hagood,* 186 S.W. 220 (Tex.Civ.App.—Fort Worth 1916, writ ref'd). Her will was ambulatory and revocable during her lifetime. *Huffman v. Huffman,* 329 S.W.2d 139 (Tex. Civ.App.—Fort Worth 1959, affirmed, 161 Tex. 267, 339 S.W.2d 885 (1960). So the gift revocably made to appellants presented no impediment to the sale of the property by *Pearla Coffman.* In the absence of any conduct on the part of appellants thwarting the free exercise by Pearla Coffman of her own will and volition in executing the powers of attorney, it matters not that appellees, acting with malice, sought to deprive appellants of the bequest made to them under the will. Our examination of this record reveals that there is no evidence and no findings establishing an actionable conspiracy. Stated another way, the appellants had a legal right to attempt, with or without malice, to enhance Carolyn Fuller's share of the estate of Pearla S. Coffman, and Pearla Coffman had a right, unimpaired by the provisions of her existing will, to sell, convey, give away, or otherwise dispose of her property during her lifetime. *Huffman v. Huffman, supra.*

Appellants failed to introduce evidence of, and secure findings showing or tending to show, that appellees made any false representations to Pearla Coffman about appellants in order to induce her agreement to authorize the sale of the property. There is no evidence shown by the record that Pearla S. Coffman was mentally incompetent at the time she executed the powers of attorney; and there is no evidence that the appellants obtained the execution of such agency contracts by force, threats or fraud of any kind operating against Pearla S. Coffman. In fact, there is no evidence in the record that Pearla Coffman did not request the preparation of the powers of attorney or that the act of Mrs. Coffman in signing the agency contracts was not a result of the free exercise of her will and volition.

■ If the purpose or aim of a conspiracy is lawful, and the conspirators have a

legitimate purpose to serve by their actions and conduct, though such be actuated by malice, no actionable conspiracy exists. *Celli & Del Papa v. Galveston Brewing Co.,* 227 S.W. 941 (Tex.Comm'n App. 1921, judgment adopted). Conversely, even though the aim or purpose of the conspiracy be lawful, if the conspirator's actions and conduct be actuated by malice and the conspirators have no legitimate interest or purpose to be served thereby, then the conspiracy is actionable. *Brown v. American Freehold Land Mortgage Co.,* 97 Tex. 599, 80 S.W. 985 (1904); *Delz v. Winfree,* 80 Tex. 400, 16 S.W. 111 (1891); *Olive v. Van Patten,* 7 Tex.Civ.App. 630, 25 S.W. 428 (1894, no writ); *Griffin v. Palatine Ins. Co.,* 235 S.W. 202, 238 S.W. 637 (Tex.Comm'n App.1921, judgment adopted). *See also, Davis v. Lewis,* 487 S.W.2d 411 (Tex.Civ.App.— Amarillo 1972, no writ).

The legal principles enunciated in the cases last cited were applied to fact situations dealing with competitive business practices and interference with business relations; however, we hold that these principles are equally applicable to this case and its facts.

Both appellees had a legitimate interest to protect or serve in seeking the favor of Pearla Coffman and the enhancement of the legacy of appellee Carolyn Fuller. In fact, Carolyn Fuller had a legitimate purpose to serve as did appellee Thomas Fuller, as an heir expectant of Carolyn Fuller, by persuading Mrs. Coffman, by any lawful means to revoke any bequest to the appellants, thus leaving Carolyn Fuller as the sole legatee of Pearla Coffman and Thomas Fuller as her heir expectant. Since the purpose of appellees' conduct was lawful or legally justified (as distinguished from morally justified), the fact that the actions and conduct of such parties were actuated by malice or ill will does not render the same actionable. The circumstances surrounding the acquisition of the powers of attorney and the sale of the home shown by the evidence here are consistent with a free and voluntary sale of the property by Pearla Coffman through her agent and attorney-in-fact, Thomas M. Fuller. We cannot conclude as a matter of law from the evidence that appellants induced Pearla Coffman to sign the powers of attorney by fraud of any kind, or by undue influence, or that appellants, knowing that Pearla Coffman lacked the requisite mental capacity to know and understand the nature and consequences of her act in executing the agency contracts, nevertheless persisted to acquire the same from her.

Appellants argue under their third point that the trial court should have rendered judgment for them for actual damages in the amount of two-thirds of the proceeds from the sale of the Coffman home "based upon the conspiracy to defraud." This point and the argument under same assumes the ademption of the bequest. In support of this argument *Pope v. Garrett,* 147 Tex. 18, 211 S.W.2d 559 (1948), is cited. A careful study of *Pope v. Garrett* reveals the plaintiff in that case brought a suit to impress a constructive trust on certain properties of the estate of one, Carrie Simons (not related to the plaintiff), because some of the heirs at law of Simons gathered at her home and heard a friend of Simons read a written will prepared by him for Simons at her request. The will devised Simons' entire estate to the plaintiff Garrett. At the moment Simons was preparing to sign the will in the presence of witnesses, other than the heirs, two of Simons heirs at law created a disturbance that prevented Simons from executing the will. Shortly after this episode, Simons suffered a cerebral hemorrhage, became unconscious and remained in such comatose state until she died without signing the will. The trial court, based on a jury verdict, awarded the beneficial interest in all properties of the decedent Simons to Garrett. In affirming the trial court's judgment the Supreme Court, speaking through Justice Smedley, held "that when an heir or devisee in a will *prevents the testator* (emphasis added) by fraud or other wrongful act from making provisions for one for whom he would have provided but for the interference of the heirs or devisees, such heir or devisee will be deemed a trustee for the person thus

defrauded." (Citing authorities.) *Pope v. Garrett* is distinguishable from our case because there the wrong was done to the prospective testatrix. Her intent and will that her properties pass at her death under the proposed will to the plaintiff Garrett was thwarted by the unlawful interference of two of her heirs at law. In our case there is no evidence, and no finding, that appellants committed any wrongful act by way of fraud or otherwise to induce Pearla Coffman to execute the powers of attorney which authorized the sale of her home during her lifetime.

■ In view of our holding that the findings by the jury do not establish an actionable conspiracy, and that the evidence does not establish as a matter of law the elements absent in the jury findings, i.e., that appellants exercised undue influence upon Mrs. Coffman to procure the powers of attorney, or that appellants induced Mrs. Coffman to execute the same by fraud or other wrongful act, or that at the time of the execution of such powers of attorney Mrs. Coffman did not have sufficient mental capacity to know and understand the nature and consequences of her act in executing the powers of attorney, and that appellants, with knowledge of her mental condition, procured her signature to the same, we overrule appellants' points 1, 2, 3 and 4.

Appellants' fifth point of error complaining of the trial court's holding that the bequest was adeemed is sustained.

That part of the judgment of the trial court holding the bequest of the proceeds from the sale of the Coffman home in Lewisville to appellants was adeemed is reversed, and judgment is here rendered that Sara Helen Bates and Fay Ellen Gleaton each have and recover judgment against appellees, Thomas Michael Fuller and Carolyn Fuller, individually, and in their capacities as Co-Independent Executors of the estate of Pearla S. Coffman, deceased, in the sum of $10,421.62 with interest thereon from November 2, 1981, at the rate of 9% per annum until paid; otherwise, the judgment of the trial court is affirmed.

McKAY, Justice, concurring in part, and dissenting in part.

I concur in the holding that the bequest was not adeemed. The house and lot of deceased had been sold prior to her death, but the proceeds of that sale were present in her estate and identifiable at the time of her death. The trial court was in error in holding that the bequest was adeemed.

This case was pleaded and tried upon a wrong theory. It was assumed by the parties and found by the trial court that the bequest was adeemed because the real estate was sold before decedent's death. That was an erroneous assumption and finding in the trial of the case.

The attempt by the appellants to recover exemplary damages was predicated on the erroneous belief that the bequest had been adeemed. The case was in such a posture that appellants did not and could not attempt to show breach of fiduciary duty to them by Fuller and her son Tommy by failing to account to them for their share of the proceeds of the sale, and that such failure was with malice and intentional harm.

The rule in Texas is that where a case has been tried on the wrong theory, and the trial court commits error in rendering judgment, then in the interest of justice the case should be remanded for a new trial. Tex.R. Civ.P. 434; *Morrow v. Shotwell,* 477 S.W.2d 538, 542 (Tex.1972); *Southampton Civic Club v. Couch,* 159 Tex. 464, 322 S.W.2d 516, 520 (1958). An excellent discussion of the question of remanding a case under circumstances as found here was prepared by Judge Robert Calvert and found in 4 St. Mary's L.J. 291.

See *Cape Conroe Limited v. Specht,* 525 S.W.2d 215, 220 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ); *Travelers Insurance Co. v. Delta Air Lines, Inc.,* 498 S.W.2d 443, 447–448 (Tex.Civ.App.—Texarkana 1973, no writ).

It is said in *Members Mutual Ins. Co. v. Tapp,* 437 S.W.2d 439, 440–441 (Tex.Civ.App.—Houston [14th Dist.] 1969), no writ.

Where a case has not been fully developed, and where it has been tried on the wrong theory, the judgment of the appellate court should be one of remand and not one of rendition.

See *Members Mutual Ins. Co. v. Tapp,* 469 S.W.2d 792 (Tex.1971); *Jackson v. Hall,* 147 Tex. 245, 214 S.W.2d 458, 459 (1948).

Since this case was tried on the wrong theory, and we hold that the trial court erred in holding that the bequest was adeemed, I would remand the case for the purpose of determining the issue of exemplary damages.